James L. Fisk and Wife *vs.* Jacob H. Stewart.

## March 1, 1880.

Statute of Limitations—Redemption.—If, without cause to prevent, a right of redemption, after it has accrued, is not asserted by action brought, for more than ten years, as against a known adverse claim of title it becomes barred by lapse of time.

Plaintiffs brought this action in the district court for Ramsey county, on September 20, 1875, praying that a certain conveyance made by them to the defendant on January 15, 1362, might be decreed to be a mortgage, that defendant

account for the rents and profits of the premises so conveyed which the defendant had received while in possession, and for all moneys received from sales made by him, and that the defendant pay to the plaintiffs the balance of such moneys after payment of the mortgage debt, and reconvey the premises to them. An appeal to this court from an order overruling a demurrer to the complaint is reported 24 Minn. 97, where the averments of the complaint are fully stated in the opinion of the court. After the determination of that appeal, the defendant answered, pleading, among other things, the statute of limitations, and the action was tried before *Brill,* J., whose findings of fact were, in substance, as follows : The premises in question, which are situate on White Bear Lake, in Ramsey county, were formerly owned by one James F. Murray, who, on March 9, 1857, mortgaged them to one Chase, who afterwards foreclosed the mortgage, and purchased the property at the foreclosure sale, on September 10, 1859, for $465, its market value being then $1,500. On February 8, 1860, James F. Murray and wife conveyed the premises to the plaintiffs, who were husband and wife, there being an understanding between these parties that one John B. Murray, a son of James F., and a brother-in-law of James L. Fisk, and who then occupied a hotel on the premises, known as the Murray House, was to remain in possession, and pay off the incumbrances thereon, if able to do so, and, on such payment, the plaintiffs were to convey to him the Murray House, and a few acres around it, the quantity not being specified, and John B. remained in possession under this agreement.

A few days before the expiration of the time for redemption from the mortgage sale, Chase agreed to extend the time therefor a short time, and to convey the premises as plaintiffs should desire, on being paid the redemption money. About the same time an oral agreement was made between plaintiffs and one Bennett, that after the expiration of the time for redemption, Bennett should pay the money necessary to redeem, and take a conveyance from Chase, and lease the

premises to John B. Murray for a year, and convey to him in fee upon being paid by Murray, within the year, the amount paid by him to Chase, and the further sum of $225. No redemption was made within the year; Chase received the sheriff's deed; and on September 29, 1860, pursuant to their agreement, Bennett paid to Chase (who refused to receive a less amount) $900, and on October 15, 1860, Chase conveyed the premises in fee simple to Bennett. As part of the same transaction, and at plaintiffs' request, Bennett gave John B. Murray a lease of the premises for one year from October 1, 1860, at the yearly rent of $225, to be paid in one payment, reserving a right of re-entry on default. The lease contained the usual covenants on the part of the lessee, and a covenant on the lessor's part that the lessee "shall have the privilege of buying the said described premises within the term aforesaid, if he so chooses, for the sum of $910, (besides the rent aforesaid,) to be paid to said R. H. Bennett," who was to convey on receiving such payment. It was agreed between John B. Murray, Bennett and plaintiffs that the conveyance to Murray, as provided in the lease, should satisfy all plaintiffs' claims, and that they and Murray would afterwards adjust their interest among themselves, their understanding as to Murray's right to a portion of the premises still continuing, and he having paid part of the incumbrances on the property prior to the conveyance to Bennett. Murray continued to occupy the premises, but did not make the payment stipulated in the lease.

In January, 1862, John B. Murray informed the defendant (who was his and plaintiffs' family physician) of the facts aforesaid, and requested him to advance the money to pay Bennett, as stipulated in the agreement, whereupon the defendant, on January 15, 1862, at the request of John B. Murray and the plaintiffs, paid Bennett $1,200, in consideration of which sum, and at the request of plaintiffs and John B. Murray, Bennett conveyed the premises in fee to the defendant; and, as part of the same transaction, and to make the

title to the premises satisfactory to defendant, and induce him to advance the money, the plaintiffs and John B. Murray executed and delivered to defendant a conveyance, bearing date January 15, 1862, of all their right, title and interest in the premises.  About the same time, and as part of the same transaction, the defendant leased the premises to John B. Murray for the term of one year from January 1, 1862, at the yearly rent of $250, payable in instalments.· The lease contained the usual reservation of a right of re-entry in case of a breach of any of the lessee's covenants, and the usual covenants on the part of lessor and lessee, and also the following agreement : "And it is hereby further understood and agreed by and between said parties that said party of the second part, (John B. Murray,) complying with all his covenants aforesaid, shall, at any time during his said term, have the privilege to purchase from the party of the first part all the estate, right, title and interest of the party of the first part in said premises hereby leased, by paying up to the said party of the first part the full amount of rent for the term aforesaid, amounting to the sum of $250, and also the further sum of $1,200 cash, as purchase-money therefor in hand paid at the time of said purchase."   And it was mutually understood that if said sum of $1,200 was not paid within the year, the time for payment should be extended. The payment by defendant to Bennett was for the benefit of plaintiffs and John B. Murray, and the intention of all these parties was to give plaintiffs and Murray an opportunity to· secure the premises for themselves, but in the manner and on the terms, only, provided in the lease from defendant; and it was mutually understood that Murray should represent the rights of the plaintiffs and himself in the premises, and that a conveyance to him, as provided in the lease, should satisfy all claims of plaintiffs to the premises, so far as defendant was concerned—the rights of the plaintiffs and Murray to be settled by themselves thereafter.

John B. Murray continued to occupy the premises.   The

sum of $250, stipulated to be paid defendant by Murray for the year 1862, was paid, a part within the year, and a part in 1863. At the end of the year 1862 the agreement between defendant and Murray was, with plaintiffs' concurrence, extended orally for another year, the rent being fixed, however, at $150, payable not later than October, 1863, which sum was paid to defendant. At the end of the year 1863, at Murray's request, and with plaintiffs' concurrence, the agreement was orally extended for another year on the same terms, and the rent of $150 for the year 1864 was paid at divers times, the last payment being made in July or August, 1865. In the spring of 1865, at Murray's request, the defendant orally agreed to an extension of the agreement for that year, on condition that the rent of $150, and all arrearages, be paid on or before September 1, 1865. Murray continued to occupy the premises, but no part of the sum of $150 for the year 1865 was ever paid or offered to be paid. The last payment ever made was made in July or August, 1865, and was the balance due on the rent for 1864.

On September 19, 1865, the defendant served on John B. Murray a written notice and demand that he deliver to defendant possession of the premises, and quit the premises without delay, the notice stating that defendant was unwilling that he should hold the same or continue in the tenancy any longer, of which demand the plaintiffs then had knowledge. Since the service of this notice the defendant has not recognized any right of Murray or of plaintiffs in or to the premises or the possession thereof, in any way. Murray still continuing in possession, the defendant instituted proceedings under the statute, to dispossess him, as a tenant holding over. Murray defended, and alleged in his answer that the deed from Bennett to defendant, and the lease to Murray with its agreement for purchase, were in effect a mortgage to secure said $1,200 and interest, and that Murray was not liable to pay rent to defendant. The title to real estate being involved and in dispute in the proceeding, the justice of the peace

24

before whom it was pending certified and returned the case to the district court for Ramsey county, where, upon a trial by jury, the defendant had a verdict against Murray. A motion for a new trial was denied, and Murray appealed to this court, where the order was affirmed, (see *Stewart* v. *Murray,* 13 Minn. 426,) and, on the filing of the mandate of this court in the district court, judgment was entered on the verdict, adjudging that the defendant have restitution and possession of the premises. This judgment was entered January 13, 1869, and sometime in that year Murray surrendered possession of the premises to the defendant, who continued in peaceable possession, uninterruptedly, down to the time this case was determined in the district court, of all the premises, except such portions as he had conveyed to other persons. And ever since the service of the notice on Murray, the defendant has always asserted his absolute ownership of the premises, which fact the plaintiffs and Murray have, during all that time, known.

The plaintiff James L. Fisk was in the military service of the United States from sometime prior to January, 1862, to June, 1865, and was absent from this state for the greater portion of that time, but in each of the years 1862, 1863, 1864 and 1865, he was within the state at different times and for several weeks, and his residence remained at White Bear Lake during all that time and until July, 1866; and his wife remained during all that time and until July, 1866, within this state. In July, 1866, plaintiffs removed to Montana, and resided there until 1871, and were absent from this state during that period. Since then they have been within this state on divers occasions, and absent therefrom on divers occasions. Their place of residence has been within this state since sometime in the year 1872. At the time of the conveyance to him in 1862, the defendant was and has ever since been a citizen of this state and a resident of the county of Ramsey. As above stated, this action was brought on September 20, 1875.

The court also found the amount received by the defendant from leasing and selling portions of the property, and the amount of taxes paid by him,—the net amount received being considerably in excess of all sums due under the lease, and the $1,200, and interest,—and determined, as a conclusion of law, that the action is barred by the statute of limitations, and that the defendant is entitled to judgment, and ordered judgment accordingly.

The plaintiffs moved to vacate and set aside the order directing judgment for defendant, and for an order for judgment for plaintiffs, on the facts as found by the court and set forth in its decision. The motion was denied, and the plaintiffs appealed.

*Gilman & Clough,* for appellants, argued, among other things, that the transaction between the parties being merely a loan of money and a mortgage to secure it, all the moneys received by defendant from the property, after he took possession, operated as payments on his claim, so that each sum received reduced his claim by that amount, and also kept the statute of limitations from running against the right to foreclose or the right to redeem. Equity, at once, and without any action of the parties, applies the money thus received as a payment on the claim of the party receiving it, and such payment has the same effect as if made by the debtor or mortgagor himself. When the defendant had thus received enough to satisfy his demand, he ceased to have any claim or lien on or interest in the property. The parties were no longer mortgagor and mortgagee. The mortgage was paid and extinguished, and the defendant was thereafter a trustee for the plaintiffs. *Smith* v. *Gibson,* 15 Minn. 89; *Brocklehurst* v. *Jessup,* 7 Sim. 438; *Harrison* v. *Wyse,* 24 Conn. 1; *Kellogg* v. *Rockwell,* 19 Conn. 446; *Newall* v. *Wright,* 3 Mass. 138, 153; *Tharp* v. *Filtz,* 6 B. Mon. 6; *McConnel* v. *Holobush,* 11 Ill. 61; *Walton* v. *Withington,* 9 Mo. 549; *Webster* v. *Singley,* 53 Ala. 208; *Green* v. *Turner,* 38 Iowa, 112; *Jackson* v. *Stevens,* 108 Mass. 94; *Pierce* v. *Robinson,* 13 Cal. 116; *Gor-*

*don* v. *Lewis*, 2 Sumner, 143; *Wyman* v. *Babcock*, 2 Curtis, 386; *Odenbaugh* v. *Bradford*, 67 Pa. St. 96; *Anding* v. *Davis*, 38 Miss. 574; *Venderhaise* v. *Hugues*, 13 N. J. Eq. 410; *Upham* v. *Brooks*, 2 Woodb. & Min. 407; *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 386, 441. Perry on Trusts, § 243; Jones on Mortgages, § 973.

*H. J. Horn* and *Bigelow, Flandrau & Clark*, for respondent.

CORNELL, J. This action was decided in the court below, upon the point that the plaintiffs' right of action had become barred by the statute; and if the point is well taken, it disposes of the case. Without considering and definitely determining the nature of the transaction between the parties, as disclosed by the findings, but viewing it in the light presented by plaintiffs as the one most favorable for them, as a loan of money made by defendant upon the premises in controversy, the legal title to which was vested in him, at the time, for the purpose of securing the repayment of the loan, the right of action belonging to plaintiffs, if any, is one of redemption. Whether this right is barred by the statute of limitations depends upon the question when the loan became due and payable, and defendant's right of foreclosure consequently accrued, and whether the statutory period of ten years, limited for the exercise of that right, has since elapsed; for, as a general rule, the right of foreclosure and the correlative right of redemption are mutual and reciprocal, and when one is barred so that it cannot be enforced, the other is also gone, unless some special facts and circumstances exist, taking the case out of the operation of the general rule, of which there can be no pretence in this case. *Holton* v. *Meighen*, 15 Minn. 69; *King* v. *Meighen*, 20 Minn. 264; *Parsons* v. *Noggle*, 23 Minn. 328.

But for the stipulations contained in the written lease from defendant to Murray, and its subsequent renewals from time to time with the concurrence of plaintiffs, it is not pretended that any specific time was fixed when the alleged loan was to be repaid; and if such was the fact, of course there was noth-

ing to prevent Stewart from treating the debt as due and payable immediately, and commencing at once his action for a foreclosure. It is contended, however, that this right to demand immediate payment was postponed by the giving of said lease, and the stipulation therein contained, in these words : "And it is hereby further understood and agreed by and between said parties that said party of the second part, (the lessee therein named,) complying with all his covenants aforesaid, shall, at any time during his said term, have the privilege to purchase from the party of the first part (the said defendant, therein named as lessor,) all the estate, right, title and interest of the party of the first part in said premises hereby leased, by paying up to the said party of the first part the full amount of rent for the term aforesaid, amounting to the sum of $250, and also the further sum of $1,200 cash, as purchase-money therefor in hand paid at the time of said purchase.". The argument of plaintiffs is that this lease, as made and executed, was one of the devices which were resorted to, at the time the loan was made, by Stewart, to cover up and conceal the real nature of the transaction ; that the stipulations therein, which in terms provided for the payment of rent at stated times, and which gave to the lessee the privilege, during the term, of purchasing the property upon paying the rent and the sum named as purchase-money—which was the same in amount as the loan—were in fact (and so intended) but stipulations to secure the payment of interest, and also the redemption of the property by a reconveyance of the title upon repayment of the loan.

Thus considered, it is plain that the stipulation—which, in its terms, gave the privilege of purchasing the premises during the term, upon complying with the conditions named in the lease—operated to extend the time for the payment of the sum loaned for that period; and it is equally obvious that such extension terminated upon the expiration of the term. The lease was for the term of one year from January 1, 1862, and contained covenants obligating the lessee to pay the spec-

ified instalments of rent as they should become due, and also a stipulation giving to the lessor the right of re-entry, upon a failure of the lessee to keep and observe any of the covenants or conditions of the lease on his part. According to the findings, this lease was renewed from year to year, with modifications as to the amount of rent to be paid, until the spring of 1865, when, the lessee being then in default in respect to the payment of the rent for the preceding year, the defendant, at his request, agreed orally with him to extend the agreement for that year, upon the condition that the yearly rent of $150, agreed upon for that year, with all arrearages, was paid on or before September 1, 1865. As no part of the rent, or of said sum of $1,200, was paid or tendered on or before that day, the defendant, on the 19th of the month, put an end to the tenancy under the lease, by the service of a written notice to that effect, coupled with a demand for the possession of the premises. The legal effect of this was to extinguish the privilege which the lessee, as the representative of the plaintiffs, enjoyed, under the lease, of purchasing the premises at any time during the term; and, as a consequence, the defendant's right to demand immediate repayment of his loan, and to foreclose upon his security, thereupon at once accrued. As ten years have since elapsed before the commencement of this action, it is evident that the defendant's right to maintain an action to recover the amount of his loan, or to foreclose upon his security, has become barred by the statute, and with it the right of plaintiffs to redeem is also gone, unless something has occurred in the meantime to suspend the running of time under the statute.

It is contended by plaintiffs, however, that the sums which defendant got from sales and rents, after he obtained possession of the property in February, 1869, operated as payments upon the alleged mortgage, as of the dates when received, and had the like effect in keeping it and the equity of redemption thereunder alive, as against the statute of limitations. This position necessarily rests upon the assumption

that the possession which he then acquired and afterwards held was that of an acknowledged mortgagee, who is equitably liable to account for the rents and profits of the mortgaged estate. Unless that was the character in which he held, his possession was no recognition of any subsisting mortgage, or mortgage indebtedness; and, without some such recognition, it is certain he could not have intended any application thereon of the proceeds of the rents and sales, and, hence, no presumption arises from any payment voluntarily made and applied, to affect the alleged cause of action of the plaintiffs. If his possession was not, in fact, according to the mortgage, but upon an adverse claim of absolute title and ownership in himself, and in open denial of any rights under the mortgage, it is obvious that the subsistence of the mortgage must be first established before any question can arise as to the liability of the mortgagee to account for rents and profits, or as to the application of any sums from that source, by operation of law or otherwise; and this fact cannot be shown if the time for bringing and maintaining an action upon his alleged equity of redemption has already expired.

According to the findings of fact herein, ever since the time when plaintiffs' right of redemption first accrued, and for more than ten years prior to the commencement of this action, the defendant, with full knowledge on the part of plaintiffs and their representative, Murray, has openly and continuously disclaimed and denied the existence of any mortgage relations between him and them, and all rights growing out of the same. In terminating the tenancy under the lease to Murray, he demanded possession in his right as absolute owner of the real property. In that capacity he thereafter instituted legal proceedings to dispossess Murray, and to recover the possession, and, after a somewhat protracted litigation, in which the same claim here made by the plaintiffs, in respect to the nature of the transaction between the parties, was interposed as a defence, he finally succeeded in establishing his right of recovery, and at once went into possession

under his asserted right of absolute ownership, and has ever since so held the same, making sales from time to time of portions of the property, and appropriating the proceeds derived therefrom, and from the rents, as his own, and not otherwise. From these facts it is evident that the character of the defendant's possession was not that of a mortgagee holding under his mortgage, and asserting rights under it; and the principles applicable to such a case, in respect to rents and proceeds realized out of the mortgaged estate during such occupancy, have no relevancy here. His possession was hostile and adverse, both in its inception and continuance. It wholly ignored and repudiated the existence of any mortgage, and all rights in the plaintiffs as mortgagors. All acts done by him during his possession were also of a like hostile and adverse character. Conceding, therefore, the original transaction between the parties to have been in the nature of a loan and mortgage, the instant defendant took this hostile attitude toward it by the setting up of a claim of absolute title to the property in himself, as he did on the 19th day of September, 1865, and that fact became known to plaintiffs, that moment, the mortgage debt being then due, time began to run against their right or equity of redemption, and they were put upon diligence to pay up the loan and enforce their right, before the period limited for its prosecution should intervene to prevent it. No subsequent act of defendant, done in the way of asserting rights under such adverse claim, not in recognition of any subsisting mortgage or rights thereunder, but in repudiation thereof, could have any effect to keep alive the equity of redemption, and stop the running of time against it. *Morgan* v. *Morgan,* 10 Ga. 297; *Kane* v. *Bloodgood,* 7 John. Ch. '90, 123. This, according to the findings, was clearly the character of all acts done by the defendant, after he got possession of the premises, in the way of making sales, collecting rents, and appropriating the proceeds.

The decision of the court below is affirmed.