HARRIET L. LIVINGSTON and others *vs.* MARY E. IVES and others.

March 4, 1886.

**Absolute Deed to secure Debt, and also to defraud Creditors — Redemption.**—The fact, that in addition to securing an indebtedness, one of the motives of a grantor in executing a deed absolute in terms, but in intention and in legal effect a mortgage, was to hinder and delay his creditors is not a defence to an action for redemption.

**Same—Pleading.**—If such defence were admissible, it should be specially pleaded, as being in the nature of a confession and avoidance.

John B. Livingston, of Pittsburgh, Pa., by warranty deed absolute in form, and bearing date May 2, 1874, conveyed to his sister, Mrs. Ruth L. Swift, of St. Peter, Minn., certain real estate in Ramsey county. Livingston died, intestate, January 4, 1877, and Mrs. Swift died in 1881, having devised the real estate to her daughters, who are defendants in this action.

On May 2, 1884, the plaintiffs, heirs-at-law of John B. Livingston, brought this action in the district court for Ramsey county, alleging that their ancestor's deed was made and received as security merely for a debt he had long owed Mrs. Swift, and praying that it be adjudged to be a mortgage, and for leave to redeem. They allege in their complaint that they resided in Pittsburgh until August, 1881, when they removed to St. Paul, their present residence; that the negotiations which resulted in the deed in question were largely conducted in St. Paul; that the letters and papers which disclosed the real character of the transactions remained in St. Paul, and were not known to them until April, 1884, nor did they until that date have access to such letters or papers, or ascertain the facts showing that the deed was intended merely as a security.

The defendants, in their answer, admitted the indebtedness from Livingston to Mrs. Swift, and alleged that the deed was made and received in satisfaction of the debt, and not as a security for it.

At the trial before *Brill,* J., the evidence for plaintiffs consisted largely of letters from Livingston to Mrs. Swift and to Captain Peter Berkey, of St. Paul, tending to show that the deed was intended

merely as a security for the debt; but these letters also tended to show that at and prior to the time of making the deed, Livingston was financially embarrassed, and that one of his purposes in making an absolute deed, instead of a mortgage, was to conceal from his other creditors his interest in the property, and thus prevent a sacrifice of it by forced sale in the then depression of real-estate values.

The court having found the deed to be a mortgage, and having ordered judgment for the plaintiffs, the defendants made the motion for an additional finding which is stated in the opinion. They appeal from an order denying a subsequent motion for a new trial.

About the same time with the deed to Mrs. Swift, Livingston made an absolute deed of other land in Ramsey county to Mrs. Welty, another sister, to whom also he was indebted. The defendants offered in evidence a letter from Livingston to Mrs. Swift, (Exhibit 55,) dated January 6, 1876, to show that he treated this land as the absolute property of Mrs. Welty. The letter was excluded. Other exceptions are stated in the opinion.

*Gordon E. Cole* and *G. S. Ives,* for appellants.

The plaintiffs having proved, as part of their own case, that the security was given by absolute deed, instead of by mortgage, in order to create a secret trust for the grantor, and hinder, delay and defeat his other creditors, by leading them to suppose that he had parted with his whole interest in the property, the court should have refused to interfere, even though the facts thus proved by plaintiffs were not pleaded by the defendants. *Pattee* v. *Greely,* 13 Met. 284; *Ingersoll* v. *Randall,* 14 Minn. 304, (400;) *Nellis* v. *Clark,* 4 Hill, 424; *Sands* v. *Codwise,* 4 John. 536, (4 Am. Dec. 305;) *Ely* v. *Cook,* 2 Hilton, (N. Y.) 406; Kerr on Fraud, 374; Willard, Eq. Jur. 49; *Bein* v. *Heath,* 6 How. 228, 247; *Hassam* v. *Barrett,* 115 Mass. 256; 1 Jones, Mort. § 283; 2 Washb. Real. Prop., 58; *May* v. *May,* 33 Ala. 203; *Miller* v. *Marckle,* 21 Ill. 152; *Weir* v. *Day,* 57 Iowa, 84; *Stephens* v. *Harrow,* 26 Iowa, 458; *Murphy* v. *Hubert,* 16 Pa. St. 50, 57; *Holliday* v. *Holliday,* 10 Iowa, 200; *James* v. *Bird,* 8 Leigh, (Va.) 510, (31 Am. Dec. 668;) *Baldwin* v. *Cawthorne,* 19 Ves. 166; *Webber* v. *Farmer,* 4 Bro. P. C. 170; *Arnold* v. *Mattison,* 3 Rich. (So. Car.) Eq. 153; *Andrews* v. *Marshall,* 43 Me. 272; *Andrews* v. *Marshall,* 48 Me.

26; *Weed* v. *Little Falls, etc., R. Co.,* 31 Minn. 154, 161. The expression in *Jones* v. *Rahilly,* 16 Minn. 283, (320,) relied on by plaintiffs, is a mere *dictum* in arguing another point on which the case was decided. Moreover, that was an action at law. A plaintiff in equity must come into court with clean hands. *Weed* v. *Little Falls, etc., R. Co., supra.*

On the question of pleading and practice, counsel cited, in addition to the foregoing cases, the following: *Hulet* v. *Stratton,* 5 Cush. 539; *Dixie* v. *Abbott,* 7 Cush. 610; *Jones* v. *Inhabs. of Andover,* 10 Allen 18; *Cardoze* v. *Swift,* 113 Mass. 250; *Brady* v. *Brennan,* 25 Minn. 210; *Thoreson* v. *Minn. Harvester Works,* 29 Minn. 341; *Williams* v. *People's Fire Ins. Co.,* 57 N. Y. 274, 278; *Leonard* v. *Green,* 30 Minn. 496. And, on the question of laches in bringing the suit, 2 Pom. Eq. Jur., §§ 816, 965; *Sullivan* v. *Portland, etc., R. Co.,* 94 U. S. 806, 811; *Dutton* v. *McReynolds,* 31 Minn. 66; *Haff* v. *Jenney,* 54 Mich. 511, (20 N. W. Rep. 563;) *Maher* v. *Farwell,* 97 Ill. 56; *German-Am. Seminary* v. *Kiefer,* 43 Mich. 105; *Spaulding* v. *Farwell,* 70 Me. 17; *Bliss* v. *Prichard,* 67 Mo. 181.

*John B. & W. H. Sanborn,* for respondents.

BERRY, J. The main controversy in this case is as to whether a certain deed of real estate, executed by John B. Livingston to Ruth L. Swift, was an absolute conveyance, as it purported to be on its face, or in legal effect a mortgage. The complaint alleges that it was given to secure an indebtedness, and is therefore a mortgage, from which it is the object of this action to redeem. The answer (1) denies the allegations of the complaint to the effect that the deed was a mortgage, and (2) avers that it was given *in payment of,* and not *as security for,* an indebtedness.

In the course of the trial evidence came out, tending, as defendants claim, to show that the deed was made, in part at least, for the purpose of hindering and delaying Livingston's creditors. The court by which the action was tried having made no finding with reference to this evidence, the defendants' counsel moved for an additional finding as to whether or not such hindering and delaying of creditors was "one of the motives or objects of Livingston in executing such absolute deed instead of a mortgage, * * * he then being in

embarrassed circumstances and insolvent, by creating the impression that he * * * had no remaining interest in said property." Defendants insisted (1) that the finding was material to the issues involved in the action, and (2) that a finding in the affirmative was justified by the evidence; but the court refused to make the additional finding.

For at least two reasons we are satisfied that the refusal was right:

1. Because no intent (in making the deed) fraudulent as respects Livingston's creditors is set up or suggested in the answer, which, on the contrary, is confined to the defences already mentioned. In fact the defence shadowed forth in the request for an additional finding is not only not embraced in the issues of the pleadings, but it is *inconsistent* with the denial (in defendant's answer) that the deed was a mortgage at all, and the further averment that it was given as payment, *not* as security. But irrespective of this latter consideration, the settled rules of pleading (especially under the Code) require that matters in confession and avoidance, like the defence in question, must be affirmatively and specially pleaded. A mere denial does not cover them. *Finley* v. *Quirk*, 9 Minn. 179, (194;) *Brown* v. *Eaton*, 21 Minn. 409; *Gunderman* v. *Gunnison*, 39 Mich. 313; *Adams* v. *Adams*, 25 Minn. 72, 76; *Haigh* v. *Kaye*, L. R. 7 Ch. App. Cas. 469.

The defendants rely upon an exception to this rule of pleading, viz., that where evidence not relevant to the issues in the pleadings is admitted without objection, it is sometimes allowed all the force which it would have had if properly pleaded. That exception is not applicable to a case like the present, where evidence is received which is pertinent to the issues therein, and which would also be pertinent to another issue which might have been but is not made by the pleadings, in which case its reception is not a waiver of an objection to the consideration of such other issue. *City of Winona* v. *Minnesota Ry. Const. Co.*, 27 Minn. 415, (6 N. W. Rep. 795, and 8 N. W. Rep. 148;) *Williams* v. *Mechanics' Ins. Co.*, 54 N. Y. 577; *O'Neil* v. *Chicago, M. & St. P. Ry. Co.*, 33 Minn. 489, (24 N. W. Rep. 192.) Neither would its introduction be such waiver when, introducing evidence pertinent to the issues made by the pleadings, the party could

not avoid also introducing the evidence not thus pertinent, as where, as in some instances upon the trial in this case, both kinds of evidence were found in the same instrument of evidence, *e. g.*, a letter; and it may be added that upon the record this is not a case in which (as is sometimes said) the course and conduct of the trial have any tendency to show that it was had upon any theory, expressed or acquiesced in, that the matter of fraud upon creditors was in fact at issue, or involved in the action.

With reference to a class of authorities cited by counsel, we note a distinction between evidence coming into a case, but not pertinent to the issues, which shows moral or criminal turpitude or a clear violation of settled public policy, and such evidence when only showing a private fraud. This distinction is adverted to in *Harvey* v. *Varney*, 98 Mass. 118, and *Oscanyan* v. *Arms Co.*, 103 U. S. 261, and seems to rest upon the ground that to overlook or disregard evidence of the first kind mentioned would be to lend a disgraceful countenance and sanction to violations of law.

From the memorandum filed by the trial court it appears that the additional finding was refused upon the ground that it was "*immaterial.*" Strictly speaking, so far as it was proper to refuse the finding on the ground that the fraudulent intent towards creditors was not pleaded, it would be because such finding would be *irrelevant*, (*i. e.*, to the issues,) rather than *immaterial*, though these words are used more or less interchangeably. However, if the refusal was proper, the precise reason given for it is not important.

2. We are further of opinion that the refusal to make the additional finding was right because it would have been strictly immaterial. That is to say, a finding that the hindering and delaying of his creditors was one of Livingston's motives or objects in executing the deed in question would not affect his right to have the deed absolute in form declared a mortgage, so as to entitle him to redeem. There are cases which hold that, in respect to a transfer of property made wholly or partly for the purpose of defrauding creditors, no relief whatever will be afforded to the party making the transfer, and that, as between themselves, the parties to the transfer will be left exactly where they are, and to extricate themselves as they may with-

out any aid from the courts of justice; so that in an instance like this at bar, where a deed absolute in form was in fact given and taken *as security*, and would therefore ordinarily be treated as a mortgage, as has been often held in this court, still, if one of the grantor's motives in executing it was to hinder and delay his creditors, he would not be heard to claim that his deed was a mortgage, and that he be permitted to redeem, but would be held strictly and irremediably to the naked and literal terms of his deed. Such are the cases of *May* v. *May*, 33 Ala. 203; *Weir* v. *Day*, 57 Iowa, 84; and many other adjudications.

Other courts treat a transaction of the kind mentioned as entirely valid between the parties, and as between them enforceable in all its terms. Their reasoning is that not only the parent statute of 13 Eliz., but the statutes since passed in this country, make such transactions voidable only in favor of defrauded creditors, leaving them in all other respects as if no such statute had been enacted; and that the fraud, if one there be, is a strictly private fraud, with which neither the public, nor the courts as guardians of public policy, have any concern, and which is available only to those injured by it. Such is the view taken by Chief Justice Parsons in *Drinkwater* v. *Drinkwater*, 4 Mass. 353; by Chief Justice Shaw in *Dyer* v. *Homer*, 22 Pick. 253; and in *Harvey* v. *Varney*, 98 Mass. 118; *Clemens* v. *Clemens*, 28 Wis. 637; *Brooks* v. *Martin*, 2 Wall. 70; *Nichols* v. *Patten*, 18 Me. 231, (36 Am. Dec. 713;) *Hoeser* v. *Kraeka*, 29 Tex. 450; *Springer* v. *Drosch*, 32 Ind. 486; *Gowan* v. *Gowan*, 30 Mo. 472; *Smith* v. *Quartz Min. Co.*, 14 Cal. 242; and by this court in *Jones* v.° *Rahilly*, 16 Minn. 283, (320.) This is the view which commends itself to our judgment. The statute against fraudulent conveyances having been enacted solely for the benefit of creditors, why should it, *by construction*, be held to operate either to the prejudice or benefit of any one else?

Many of the cases cited against the view which we adopt may readily be distinguished from this at bar in this respect, viz., that they relate to attempts on the part of a grantor to *repudiate* his transfer or conveyance, upon the ground that he had wholly or partly made it to defraud his creditors; an entirely different case from this, where

the effort is not to repudiate the real contract between the parties, but to carry it into effect. The deed absolute in form was not absolute in fact, but a mortgage, and the plaintiffs simply ask that this state of things may, as between mortgagor and mortgagee and their heirs, be recognized according to the truth of the case.

With reference to *Hassam* v. *Barrett*, 115 Mass. 256, which is much relied on by defendants' counsel, it seems to us not in principle fairly reconcilable with *Dyer* v. *Homer*, *supra;* and that it is not the understanding of the supreme court of Massachusetts that the latter case is overruled by the former is apparent from the fact that *Dyer* v. *Homer* is cited and relied upon as late as *Snell* v. *Dwight*, 120 Mass. 9. So far as authority and weight of reasoning are concerned, the opinion of the court in *Hassam* v. *Barrett* will hardly bear comparison with that of Chief Justice Shaw in *Dyer* v. *Homer*. We may add that while the words of the court in *Hassam* v. *Barrett* strongly favor the position of defendants' counsel, the facts in that case differ from the case at bar in respects which may not be unimportant.

With reference to defendants' contention that plaintiffs' claim for relief is stale, we are unable to discover any reason for taking this case out of the ordinary ten-years limitation of actions for redemption of mortgages, as that limitation has been laid down and applied by this court in *Holton* v. *Meighen*, 15 Minn. 50, (69;) *King* v. *Meighen*, 20 Minn. 237, (264;) *Parsons* v. *Noggle*, 23 Minn. 328; *Fisk* v. *Stewart*, 26 Minn. 365, (4 N. W. Rep. 611.)

There are, so far as we see, no facts or circumstances going to show that plaintiffs are or ought to be estopped from availing themselves of the right of redemption for the full usual period allowed in such cases. If the transaction was in fact a mortgage, as plaintiffs claim, there is nothing inequitable in this case in permitting them to treat it as such, and as they would if it were a mortgage in form. See *Meighen* v. *King*, 31 Minn. 115, (16 N. W. Rep. 702.) They cannot be said to have "stood by" and allowed the property to be improved by or transferred to parties who have been misled, or in any proper legal contemplation injured, by their silence or acquiescence. Their mere delay to assert their legal rights is not in such circum-

stances laches, even if it be admitted that any mere delay short of 10 years could be regarded as under any circumstances fatal to the prosecution of their claim of redemption.

As we have no doubt that the evidence in this case is sufficient to support the findings of the trial court, it only remains to consider certain exceptions taken by defendants to the admission of evidence upon the trial.

1. Exhibit 55 (Livingston's letter of January 6, 1876, to Mrs. Swift) appears to have been properly excluded as immaterial, and as having nothing to do with this case. Whether the arrangement with Mrs. Welty was like that with Mrs. Swift, or not, was a question foreign to the issues here, and therefore not proper to be gone into on this trial.

2. The court properly refused to permit the memorandum of his conversation with Capt. Berkey, made by the witness Ives, to be put into his hand while he was upon the stand, for the purpose of refreshing his memory; for there is nothing in the case to show that his memory required to be thus refreshed, or that his recollection was not clear and distinct without reference to the memorandum. On the contrary, without reference to it, the witness had assumed to testify, and had ostensibly testified, fully as to the conversation mentioned. The rule of evidence by which a witness is permitted to resort to a memorandum made by him for the purpose of *refreshing* his memory *per se* involves the idea of the necessity of so refreshing it. If it needs no *refreshing*, there is no occasion to refresh it; and this is fairly and necessarily inferable from what is said upon this subject in 1 Starkie, Ev. 175, 176; and see *Russell* v. *Hudson River R. Co.*, 17 N. Y. 134.

3. The admission of testimony as to the contents of the letter from Mrs. Swift to John B. Livingston, (the parties to the transactions involved in this suit,) both deceased, was not in violation of Gen. St. 1878, c. 73, § 8. That section has reference only to spoken words. *Chadwick* v. *Cornish*, 26 Minn. 28, (1 N. W. Rep. 55.)

4. The offer to show that Mrs. Swift always treated the property to which this controversy relates, while it was in her possession, as

her own was properly excluded as hearsay. *King* v. *Frost*, 28 Minn. 417, (10 N. W. Rep. 423.)

The only other exception which we feel called upon to notice in this opinion is that to the reception of Exhibits 13 and 14, being letters from John B. Livingston to Capt. Berkey. As to Exhibit 13, we are inclined to agree with plaintiffs' counsel that there is at least fair ground to infer that it was written before the delivery of the deed claimed to be a mortgage to Mrs. Swift; and as to Exhibit 14, while we are not quite able to see why it was strictly speaking admissible, we feel no hesitation in saying that, even if improperly admitted, it is of too little significance to have materially affected the result arrived at by the learned and experienced trial judge, and therefore furnishes no sufficient reason for a new trial.

Order affirmed.