GEORGE W. HALL *vs.* NORTHWESTERN ENDOWMENT & LEGACY ASSO-
CIATION.

August 7, 1891.

**Mutual-Benefit Society—Change of Beneficiary.**—Finding of fact sustained, to the effect that a person whose life was insured in a mutual-benefit association had not changed the beneficiary appointed in the certificate. In a letter to the company, he had indicated a substitution of beneficiaries, which he desired to make, sending his certificate for that purpose; but, it being returned to him with directions to sign a formal revocation and reappointment of beneficiaries, indorsed on the certificate, he retained it without further action.

**Evidence—Transaction with Deceased Person.**—*Chadwick* v. *Cornish*, 26 Minn. 28, followed to the effect that evidence of the *acts* of a surviving interested party with a person deceased is not within the rule excluding conversations and admissions.

Appeal by defendant from a judgment (of $1,167.45) of the district court for McLeod county, where the action was tried by *Baxter, J.*, (acting for the judge of the 8th district,) without a jury.

*Hoyt & Johnson, H. H. Bonniwell,* and *F. R. Allen,* for appellant.
*R. H. McClelland,* for respondent.

DICKINSON, J.    This is an action upon a certificate of insurance of the life of one Andrew J. Hall, who was a member of the defendant corporation.    The certificate named this plaintiff as the beneficiary to whom payment was to be made in the event of the death of the assured.    The only defence made was that before his death the assured had designated other beneficiaries, revoking the appointment of the plaintiff as such.    Issue being joined as to that defence, the court found the fact against the defendant.    The principal question on this appeal is whether this finding of fact was justified by the evidence.

We are of the opinion that the finding of the court should be sustained.    By the terms of the certificate it was made payable to the plaintiff, or to such person as the assured might subsequently direct, by will or otherwise.    Indorsed on the certificate was a blank form, to be filled out and executed, for the purpose of changing the designated beneficiary, if that should be desired.    Section 10 of the by-laws of the association, subject to which the contract was made, provided that "certificates of membership shall not be transferred to bind the association, except such transfer shall be allowed by the secretary, and noted upon the books of the association."    It seems to be conceded that this refers to, or at least embraces, changes of the beneficiaries in such certificates.    On the 15th of April, 1890, the assured filled out the blank indorsed on the certificate, so that it read as a revocation of the appointment of the plaintiff as beneficiary, and a designation of others in his stead.    This was not, however, signed, dated, or witnessed, the blanks for such purposes being left unfilled. He then sent the certificate, thus indorsed, to the secretary of the association, with a letter in which he said:

"Inclosed find one of my certificates for change, No. 1,271.

"To Nettie Hall, $500.00.

" Otto Hall, $500.00.

"Temple Lodge A. F. & A. M. of $500 Hutchinson to pay my funeral expenses to pay monument.    I have turned over to my brother over $1,500.00 from other sources he is able but he has not one child

that if they should have $100 or $1,000.00 almighty soon doing them harm sent certificate to I. Kouwe, Hutchinson, Minn.

"Truly yours,                                   A. J. HALL."

Upon receiving this communication, the secretary, on the 17th day of April, returned the certificate to Hall, with a letter calling his attention to the fact that the indorsed revocation and reappointment of beneficiaries had not been signed, dated, nor witnessed, and saying that as soon as it should be signed and returned he would attend to it. Hall received this letter with the certificate, and retained the latter without further action on his part, so far as is shown. He did not sign the indorsement on the certificate. He died on the 26th of April.

It is unnecessary to decide whether the member of the association might, by his own act of revocation and reappointment, without any assent or action on the part of the association, effectually change the beneficiary so that the person last appointed might recover. It may be assumed that this might have been done. While it is apparent, from the letter of the assured sent to the secretary with his certificate, that he intended to have a change made in the contract, so that the sum specified should be payable to the persons designated in the letter, it is a matter of doubt whether he intended that the letter and the return of the certificate should alone be effectual to complete such a change in the contract. His letter stated that he sent the certificate "for change," and directed "certificate" to be "sent." It contained matter of personal explanation and comment which would not naturally be embraced in a document intended as a legal instrument. The more formal indorsement on the certificate, which if executed would have constituted a perfectly plain exercise of the power of revocation and reappointment, was left unsigned. It is a just inference of fact that he intended to designate the change which he desired to have made by a new certificate to be issued. At least he knew, when the secretary returned the certificate for his proper execution of the indorsed revocation and reappointment, that the other party to the contract did not claim the substitution of beneficiaries to have been yet effected. He was then advised that if he desired to have the change made he should subscribe the declaration indorsed on the cer-

tificate, and return it to the secretary. This he did not do, but retained it without further action. The evidence suggests no reason why he did not comply with the simple direction of the defendant's secretary, if he still desired to carry out his previously expressed purpose. The trial court was justified in inferring that the assured either concluded not to perfect the substitution, or, at least, that he remained undecided whether or not he would do so. In either case, the contract remained in form unchanged, and the substitution was not effectually made.

There was no error in receiving the testimony of the plaintiff, to the effect that he got the letter of the defendant's secretary from the post-office, read it to the assured, and gave it to him. Such *acts* of a surviving interested party are not within the statutory rule relating to conversations with a deceased person. *Chadwick* v. *Cornish*, 26 Minn. 28, (1 N. W. Rep. 55;) *Livingston* v. *Ives*, 35 Minn. 55, 62, (27 N. W. Rep. 74.) The court at first overruled an objection to proof of the conversation of the witness with the deceased, but, before any prejudicial evidence had been given, further proof of this kind was excluded. The only objectionable testimony given was that, when the witness read the letter to the deceased, he "asked him why he wanted to do so, as he and I had agreed." This testimony could not have affected the result. There is no doubt, upon the other evidence in the case, that the letter was read to the deceased, and hence that he knew its contents. It is hence quite immaterial that improper evidence was also received, further showing that his attention was called to the subject at the time the letter was read. The proof of the mere question addressed by the witness to the deceased could have had no other effect than to show that the attention of the latter was called to the subject; and this, as we have said, was shown without dispute by that part of the testimony which was not objectionable.

Judgment affirmed.