## IN THE MATTER OF THE ESTATE OF FREDERICK A. BERDELL, DECEASED.

## AMANDA ANDERSON v. WILLIAM OLESON, AS ADMINISTRATOR OF SAID ESTATE, AND OTHERS.[1]

July 18, 1919.

No. 21,368.

**Bastard — letter sufficient to satisfy statute.**

1. A letter alleged to have been written and signed by deceased, attested by a witness and sent to respondent, is *held* to be sufficient in form to constitute an acknowledgement of paternity under G. S. 1913, § 7240.

**Secondary evidence of lost letter.**

2. Where such a letter is lost, secondary evidence of its contents may be received.

**Witness — testimony as to contents of lost letter.**

3. Respondent, an interested party, is not disqualified by G. S. 1913, § 8378, from testifying as to its contents.

**Bastard — evidence of receipt of letter.**

4. The evidence is sufficient to sustain a finding that the letter was written and sent to respondent and received by her.

**Secondary evidence of lost letter.**

5. The evidence of the loss of the letter is sufficient to permit secondary evidence of its contents.

From the final decree of the probate court for Watonwan county in the estate of Frederick A. Berdell, deceased, vesting title to the real estate and personalty in certain brothers and sisters and the children of

1Reported in 173 N. W. 665.

deceased brothers and sisters of decedent, Amanda Anderson appealed to the district court for that county. The appeal was heard by Comstock, J., and a jury which answered in the affirmative the question quoted in the second paragraph of the opinion. The court made findings and reversed the order of the probate court. From an order denying their motion for a new trial, William Oleson, administrator of the estate, and others appealed. Affirmed.

*Edward Farmer,* for appellants.

*S. B. Wilson,* for respondent.

HALLAM, J.

Frederick A. Berdell died January 29, 1917, intestate. He was unmarried. Respondent claimed to be his daughter and claimed his estate. The probate court denied her claim. She appealed to the district court. She prevailed there and other claimants of the estate, relatives of deceased, appeal.

1. Our statute provides that "an illegitimate child shall inherit * * * from the person who, in writing and before a competent attesting witness, shall have declared himself to be his father." G. S. 1913, § 7240. The court submitted to a jury the question: "Did Frederick A. Berdell, in his lifetime, in writing before a competent, attesting witness, declare himself to be the father of Amanda Anderson?" The jury found in the affirmative. The court confirmed and adopted the finding and thereupon ordered judgment assigning the estate to respondent.

The alleged acknowledgement was by a letter claimed to have been written by deceased to respondent in 1915. Deceased then lived at Odin, Minnesota, and respondent at Los Angeles, California.

The material part of the letter as testified to by respondent was as follows: "I am told you should have from me a letter, signed by a witness showing that you are my child and I am your father, and this letter is to show that you are my child and I am your father, and I had Ole A. Larson sign it as a witness.

"With love, your father,<br>"F. A. Berdell.

"Ole A. Larson."

If such a letter was written it was sufficient acknowledgement to comply with the statute.

2. The letter was not produced. Respondent testified that it was lost and she and Ole A. Larson, the attesting witness, were permitted to testify to its contents.

Appellants contend that this was error, that in order to make the proof contemplated by the statute the writing itself must be in existence and must be produced in court, "that unlike other writings that have become lost, secondary evidence in this case is not admissible." We do not understand this to be the law. Secondary evidence of a lost instrument may be received, even though the instrument be one which the law requires to be in writing. 2 Enc. Ev. 317, 318; In re Devoe's Estate, 113 Iowa, 4, 84 N. W. 923; Taylor v. Riggs, 1 Pet. 591, 7 L. ed. 275. Counsel quotes the language of the court in Pederson v. Christofferson, 97 Minn. 491, 502, 106 N. W. 958, 962, that "the only competent proof that the testator acknowledged the contestant to be his child was a writing signed and witnessed as the statute requires." But the court was plainly speaking of the necessity of written, as contrasted with oral, acknowledgment of paternity, and had no reference to the proper means of proof of the writing when one is made.

3. Section 8378, G. S. 1913, provides that "it shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased * * * person, relative to any matter at issue between the parties." There are certain exceptions not material here. Appellants urge that, under this statute, respondent, being an interested party, was not competent to testify as to the contents of the letter written by the deceased. There is creditable authority sustaining appellants' contention. See 40 Cyc. §§ 2325, 2328; McCorkendale v. McCorkendale, 111 Iowa, 314, 82 N. W. 754; Stevens v. Witter, 88 Iowa, 636, 55 N. W. 535. But the question has been decided in this state adversely to the appellants' contention. This court long ago held that the statute refers to spoken words and does not preclude an interested party from giving evidence of the contents of a lost document executed by deceased. Livingston v. Ives, 35 Minn. 55, 62, 27 N. W. 74; Newton v. Newton, 46 Minn. 33, 37, 48 N. W. 450; Hulett

v. Carey, 66 Minn. 327, 334, 69 N. W. 31, 34 L.R.A. 384, 61 Am. St. 419.

4. It is contended that the showing made as to the writing and sending of the letter is sufficient. Respondent testified positively that she received such a letter. Ole A. Larson testified that he saw deceased write and mail a letter to respondent, and the version he gives of its contents identifies it as the letter which respondent testified she received. Larson testified to the circumstances, said that one day while they were traveling on the train together deceased told him that he had a daughter, "an heir," that he told deceased that he had read in a newspaper that in order to have a legal heir "he would have to have it in writing and a witness to it." That deceased said "if that was so he could fix that up all right," and when they left the train they went to a saloon and there deceased procured writing material and this letter was written and signed and witnessed by Larson. The evidence is not contradicted and in the nature of things could not be; counsel argue that the story, though not contradicted, is unreasonable and improbable. The question presented is purely one of fact. The jury found the stories of respondent and Larson true. Their stories are reasonably consistent and not impossible nor so improbable that an appellate court can reject them as untrue. They sustain the findings that the letter was in fact written by deceased and received by respondent.

5. It is contended that the evidence of the loss of the letter is insufficient to permit secondary evidence of its contents. Appellant's testimony is that she was employed in Los Angeles, California, as a household servant; that she received the letter and kept it in her trunk with other letters; that she kept the trunk in her room and all her things were confined to that room; that, before the trial, she searched for the letter, took everything out of the trunk, shook everything, then took everything out of the dresser drawers, searched for it all over the room and in the closet, took up the rug and searched under it, searched the bedding; that she looked in every place where she had ever kept letters, but could not find it, and that she believed that it had accidentally gotten in with a bunch of letters that she had burned. It is difficult to see how the loss of the letter could be more effectively proven. Two other persons, her employers, lived in the house. Appellant contends she should have asked them whether they saw it, took it or had it. But

her testimony is that they never "interfered with" her room, nor frequented it. Due diligence would hardly require that she inquire of them as to the whereabouts of a private letter commonly kept in her private trunk.

Order affirmed.