# R. H. KATH v. MARTHA KATH AND ANOTHER.[1]

November 28, 1952.

No. 35,809.

[1]Reported in 55 N. W. (2d) 691.

*Smith, McLean & Peterson,* for appellant.
*Gallagher, Farrish & Sheran,* for respondent Martha Kath.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's alternative motion for judgment notwithstanding the verdict or a new trial in an action brought to have plaintiff adjudicated the owner of personal property transferred to the defendant to defraud a creditor.

Plaintiff husband, a physician, and defendant wife were married in 1921 and divorced in 1948. In 1933 plaintiff opened a stock brokerage account with Piper, Jaffray & Hopwood of Minneapolis whereby the latter was authorized to buy, hold, and sell stock for the plaintiff without his signature. In 1937 plaintiff, to hinder or defeat a judgment creditor, transferred the stock account to the name of his wife, the defendant; and the account remained in her name until some time prior to the hearing of the divorce action in September 1948 when the brokers, *upon plaintiff's sole request,* transferred the stock account back to the plaintiff. Subsequent to this retransfer, and at about the time of the divorce hearing, the brokers paid to defendant, upon her request, $97.88 in accrued dividends. Plaintiff inquired at this time why this payment had

been made to defendant, and the brokers then requested a joint written statement of ownership. On October 11, 1948, plaintiff complied with their request by giving them a letter, signed by himself and purportedly also bearing the signature of the defendant, which certified the stock account to be his sole property. The brokers, upon later learning there still was some dispute regarding ownership of the stock and not being certain whether defendant's signature on the above letter was genuine, requested defendant to sign another written statement certifying that the stock was owned solely by the plaintiff. Defendant thereupon denied that she had ever signed the letter of October 11 and asserted that she was the exclusive owner of the stock. Pursuant to M. S. A. 544.14, the brokers then deposited the stock with the clerk of the district court pending a determination of ownership. Plaintiff's action followed. All issues of ownership were submitted to the jury upon the following interrogatories:

"Question No. 1:

"Did Martha Kath sign the letter to Piper, Jaffray & Hopwood, dated October 11th, 1948, * * *?"

"Question No. 2:

"Who is the owner of and entitled to the possession of the stocks here in question, * * *?"

The jury answered the first question in the negative and the second by finding defendant wife the owner.

Plaintiff then moved for judgment notwithstanding the verdict or a new trial on the grounds that the verdict was not justified by the evidence, was contrary to law, and that the jury was influenced by passion and prejudice in answering the first question. The motion was in all respects denied, and this appeal followed. After perfection of the appeal, the trial court filed a memorandum which was made *nunc pro tunc* a part of its order denying plaintiff's motion.

We have the following issues:

a. Is the jury's verdict supported by the evidence?

b. Is the plaintiff transferor barred from relief on the ground that the transfer of the stock to the defendant was made to hinder and defraud a creditor?

■ The trial court's memorandum, which was prepared after the perfection of this appeal, and which was made *nunc pro tunc* a part of the order from which this appeal is taken, is a nullity and cannot be considered on review since the trial court had no jurisdiction of the cause when the memorandum was made. For possible future application the attention of counsel is directed to § 60.01 of the Rules of Civil Procedure which makes provision for the correction of certain errors of oversight or omission pending an appeal.

The jury's findings are not in the form of a general verdict and consist only of answers to specific questions of fact. Pursuant to M. S. A. 546.20, the trial court may instruct the jurors, *if they render a general verdict,* to make a written finding upon any question of fact submitted to them in writing. Although we have here, in form, only interrogatories and no general verdict the jury's answer with respect to the second question constitutes, in substance, a general verdict and will be so considered on this appeal.

■ Defendant, in order to establish ownership of the stock, must rely on the theory that the transfer to her of the brokerage account constituted an executed gift. The legal requisites of a gift *inter vivos* are (1) delivery, (2) intent on the part of the donor to make a gift, and (3) absolute disposition of control and dominion by the donor of the thing which he purports to give to another.[2] In the light of these requisites does the evidence sustain a verdict for the defendant? The evidence adduced to show intent disclosed that the immediate purpose for transferring the stock was to defeat a judgment creditor. Plaintiff's testimony is clearly to that effect. Defendant's testimony taken as a whole can lead only to the conclusion that her husband, the plaintiff, had discussed the purpose of the transfer with her and that she fully knew its fraudulent purpose. Their motivating purpose cannot be overlooked if we are to

[2]Cooney v. Greenwalt, 235 Minn. 377, 51 N. W. (2d) 285; Owens v. Owens, 207 Minn. 489, 292 N. W. 89.

understand what they actually intended. Aside from the immediate purpose of the transfer, the plaintiff transferor of course could have also intended a secondary or further purpose of making an absolute gift to his wife. The evidence as a whole will not, however, sustain a finding that an absolute gift was intended. We are not overlooking the principle that where the husband pays the consideration for property transferred to his wife there is a rebuttable presumption of a gift by him to her.[3] A presumption, however, is merely a procedural device and dictates a decision *only where there is an entire lack of competent evidence to the contrary* and the very moment substantial countervailing evidence appears from any source it ceases to have any function and vanishes completely from the cause as if it had never existed.[4] Here we have such substantial countervailing evidence.

Although it is possible, especially between husband and wife, that a transferor may have a dual motive of defrauding a creditor and of making a gift the evidence here does not sustain a finding of a dual motive. Both parties fully understood that the immediate and dominating purpose was to defraud plaintiff's creditor. The wife so admitted but stated that plaintiff did not in so many words tell her that she was to give the stock back to him. On cross-examination, she first said that she thought the transfer was made because the stock was "ours" and then she admitted that she didn't know of any reason for the transfer other than that of defeating a creditor. The closest that defendant came to giving positive testimony that plaintiff intended to make a gift to her was when she said: "Why I thought it was mine for security." There was much testimony to show that defendant had given many years of faithful and devoted service to her husband and family which might have justified the making of a gift of the stock to her, but justification alone does not establish the essential element of *intent*.

---

[3]State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. (2d) 1.

[4]See, Shell Oil Co. v. Kapler, 235 Minn. 292, 50 N. W. (2d) 707; TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468.

Other than the fact that the brokers sent defendant monthly statements and permitted her to make a single withdrawal of dividends at about the time of the divorce suit, there is practically no evidence that plaintiff ever surrendered absolute disposition of control and dominion over the stock account. The evidence stands practically uncontradicted that, throughout the 11 years during which the stock account was in defendant's name, plaintiff at all times exercised exclusive control and management of the account and alone directed the brokers when to buy and sell stock. All correspondence with respect to the stock transactions was carried on by and with the plaintiff. In corroboration of the fact that dominion and control were never surrendered, we have a similar situation between the parties with respect to plaintiff's bank account which was also transferred to the defendant to defraud the same creditor. Plaintiff alone managed, used, and controlled the bank account and at no time did defendant assert or exercise any right of usage or control with respect to the same. Thus, we have a pattern of conduct between these parties which clearly negatives an *intent* to make a gift and negatives any surrender of dominion and control. Their conduct establishes nothing more than a co-operative effort to hinder and defraud a creditor.

▮ Under the circumstances little if any significance can be attached to the fact that the stock was not specifically considered in the divorce property settlement. At best the omission of the stock justifies conflicting inferences. We also have not overlooked the jury's finding in answer to the first question. Defendant denies that she signed the letter although her attorney and plaintiff's attorney testified positively that she signed it in their presence. It is not necessary to resolve the issue as to the genuineness of her signature because, regardless of whether she did or did not sign the letter, the result would not be changed in view of the fact that the evidence as a whole does not justify a finding that a gift was made and cannot sustain a verdict for the defendant. It is elementary that, if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth,

he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary.[5]

Is plaintiff, however, barred from all relief by reason of fraud as to a creditor? The majority of courts generally hold that a transferor who has made a transfer to defeat creditors has unclean hands and therefore deny him equitable relief when he seeks to impeach the transfer.[6] In this jurisdiction, however, the majority rule is not followed with respect to matters at issue between the parties to a fraudulent transfer unless their own fraud is asserted as a ground for relief. We have consistently taken the view that the statute against fraudulent conveyances was enacted solely for the benefit of creditors,[7] that, as between the parties to the conveyance, the fraud as to creditors is strictly private and of no concern to the public, and that, therefore, the statute should not be held to operate to the prejudice of either party[8] when they do not assert such fraud as a ground for relief.[9] Our decisions purport not to disregard the rule that courts will refuse to exert their powers to extricate the parties from the consequences of their own dishonesty but to proceed on the much narrower principle that a party to a fraudulent transfer ought not to be permitted to show his own turpitude to cheat the other party. It follows that a transfer which is voidable as to defrauded creditors (as well as to bona fide assignees in whose favor an estoppel arises[10]) but which, *aside from the element of fraud as to creditors,* is valid in other respects

---

[5]Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637.

[6]See, 22 Minn. L. Rev. 430; 1 Glenn, Fraudulent Conveyances and References (Rev. ed.) § 118b.

[7]With the exception of certain bona fide assignees in whose favor an estoppel arises. See, Moffett v. Parker, 71 Minn. 139, 73 N. W. 850.

[8]Livingston v. Ives, 35 Minn. 55, 27 N. W. 74; Devlin v. Quigg, 44 Minn. 534, 47 N. W. 258, 10 L. R. A. 665. See, 24 Minn. L. Rev. 872; 22 Minn. L. Rev. 429; 14 Minn. L. Rev. 297.

[9]See, Devlin v. Quigg, *supra,* and Turpin v. Hayek, 219 Minn. 587, 18 N. W. (2d) 592.

[10]Moffett v. Parker, 71 Minn. 139, 73 N. W. 850; cf. Anderson v. Lee, 73 Minn. 397, 76 N. W. 24.

is binding and enforceable between the transferor and the transferee, and neither of them may assert the fraud as a bar to, or as a basis for, legal or equitable relief against the other.[11] In other words, the fraud as to creditors is immaterial *between the transferor and the transferee* when relief is sought on a ground other than that of fraud even though the evidence necessary to establish such other ground may incidentally disclose a fraud as to creditors.[12] It necessarily follows as a corollary that, if a transfer is defective on nonfraudulent grounds, the fraudulent transferor may, *as against the transferee,* obtain a rescission by alleging and proving facts (such as want of consideration for a conveyance or mortgage,[13] or lack of intent to make an absolute gift[14]) which, *irrespective of the element of fraud,* renders the purported transfer inaffective. There is no logical basis for making a distinction between fraudulent transfers by way of purported gifts and those made for security and other purposes.[15]

In the instant case the transfer from the plaintiff to the defendant was ineffective as a gift *inter vivos.* Plaintiff at all times retained his ownership of the stock and has been and is entitled to immediate possession. It was error to deny his motion for judgment notwithstanding the verdict.

The order of the trial court is reversed.

Reversed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

---

[11]Livingston v. Ives, 35 Minn. 55, 27 N. W. 74; Devlin v. Quigg, 44 Minn. 534, 47 N. W. 258, 10 L. R. A. 665.

[12]Devlin v. Quigg, 44 Minn. 534, 47 N. W. 258, 10 L. R. A. 665.

[13]Devlin v. Quigg, 44 Minn. 534, 47 N. W. 258, 10 L. R. A. 665; Bickford v. Johnson, 36 Minn. 123, 30 N. W. 439.

[14]Zak v. Zak, 305 Mass. 194, 25 N. E. (2d) 169; 24 Minn. L. Rev. 872.

[15]See, 24 Minn. L. Rev. 872.