# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA,

### IN DECEMBER TERM, 1860.

———————⋆———————

DANA & WHITE, Plaintiffs in Error, *vs.* THE BANK OF SAINT PAUL, Defendant in Error.

#### ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

That section of the General Banking Law of this State, which provides that all contracts made by the bank, and all notes and bills issued and put in circulation as money, "shall be signed by the President and Cashier thereof," is intended to provide the public with evidence of the authority of the bank agents, but does not require that all contracts of the bank shall be made by those officers. Any one may contract with these corporations through other than their statutory agents if they deem it safe and advisable; but before they can enforce their contracts against the bank, they will be obliged to show the authority under which the agent acted.

Although a corporation is not permitted to transact business other and different from the one for which it was chartered, yet it should clearly appear that the act or contract was not within its powers before a court would declare such to be its character.

Points and authorities of Plaintiffs in Error.

*First.*—Under the old system of pleadings the answer would have been clearly bad as argumentative. *Browne on Statute of Frauds*, 491; *Leaf vs. Tuton*, 10 *Mees. & Wells*, 393; *Reade vs. Lamb*, 10 *Wells, Hurl & Gord.* 130; *Minor vs. Terry*, 6 *How.* 208; 1 *Chitty's Pleadings*, 479, 527; 1 *Tidd's Practice*, 652; *Rule 2d of Stephen's Pleadings*, 418; *Kennedy vs. Strong*, 10 *Johns. R.* 289.

And an error of this kind was properly taken advantage of by demurrer. *Gould's Pleadings, Ch. 6, Sec. 86 to 89.*

*Second.*—But even if that form of pleading were allowable, the answer does not go far enough. It states simply that the contract was not signed by the President and Cashier.

*Third.*—But even conceding that the Defendants are not a corporation sole, and have a President and Cashier, and have not *ratified* the contract, and that the contract was not signed by the President and Cashier, the answer is still insufficient.

The statute is directory only. Formerly the doctrine was that corporations could only contract through their corporate seal, and could not make a simple contract. *Angell & Ames on Corporations*, 198. But that doctrine has been long exploded. *Angell & Ames on Corporations*, 199; 2 *Kent's Com.* 233; *Clark vs. Guardians of Cuckfield Union*, 11 *English Law and Equity*, 442.

And that technical doctrine being discarded, it would seem to result from the very structure of these artificial beings that there are two general modes in which they may contract: first, by vote; second, by their duly authorized agents. *Angell & Ames*, 199; *Trustees First Baptist Church vs. The Brooklyn Fire Insurance Co.*, 19 *New York Rep.* 310.

This we certainly may take to be the law, in the absence of any statutory provisions.

*Fourth.*—This again is substantially a contract of insurance of the value of the bills of Glencoe for a definite period. Such a contract is one that a corporation even may make by parol and without any writing. 19 *New York Reports*, 305; *Commercial Mutual Marine Insurance Co. vs. The Union Mutual Insurance Co. of New York*, 19 *Howard U. S. R.* 318.

Points and authorities of Defendant in Error:

The Court did not err in overruling Plaintiff's demurrer to Defendant's answer. *Statutes of Minn. p.* 858, *Sec.* 18; *Angell & Ames on Corp.*, *Secs.* 291, 297, 299, 301; *Story on Agency, Sec.* 115; *Story on Contracts, Sec.* 312; *Farmers and Mechanics Bank vs. Troy City Bank*, 1 *Douglas*, (*Mich.*) 458; *Bank of the United States vs. Dunn*, 6 *Peters*, 51; *Bank of Metropolis vs. Jones*, 8 *Peters*, 8–12; *Salem Bank vs. Gloucester Bank,*

17 *Mass.* 1–29; *Foster et als. vs. Essex Bank,* 17 *Mass.* 469, 512; *Hayden et als. vs. Middlesex Turnpike Co.,* 14 *Mass.* 387; *Moss vs. Livingston,* 4 *Com.* 208; 4 *Florida,* 192; 12 *U. S. D. p.* 139, *Sec.* 124; *Dedham Institution vs. Slack,* 6 *Cush.* 408; *Holt vs. Bacon,* 25 *Miss.* 567; 14 *U. S. D. p.* 79, *Sec.* 21; *Farmers Bank vs. McKee,* 2 *Barr. Pa.* 218; *Hughes vs. Bank of Somerset,* 5 *Littell,* 45; *Pendleton vs. Bank of Kentucky,* 1 *Monroe,* 180.

W. H. PECKHAM, Counsel for Plaintiffs in Error.

WM. HOLLINSHEAD, Counsel for Defendant in Error.

*By the Court*—FLANDRAU, J. Demurrer to answer. The complaint alleges that the Plaintiffs made a contract with the Defendant, the nature of which, in this connection, it is unnecessary to state; that the Defendant was a corporation organized under the general banking law of the State, (*Comp. Stat.* 854); alleges breach, and claims damages. The answer simply avers " that the contract or agreement alleged and specified in the said complaint, was not signed by the President and Cashier of the said Bank, the Defendant, as required by the provisions of section nineteen of said act," referring to the general banking law above cited.

The section of the act upon which the answer is framed is in the following words: " Contracts made by the bank or banking association established under the provisions of this act, and all notes and bills issued and put in circulation as money, shall be signed by the President and Cashier thereof." 

The only possible aspect in which this answer can be sustained, is upon the supposition that the Defendant can make a contract or incur an obligation in no other way than by the signature of the officers designated in the statute; because, as the complaint states simply that " the Defendant contracted and agreed," etc., if it can be made to appear that the Defendant could contract and agree in any other than the statutory way, then the answer admits that it did so contract, and is bad.

There is nothing peculiar in the act under which the Defend-

ant is incorporated; it is a general act under which any person or persons may become incorporated for the purpose of banking, and when so incorporated, they become invested with the usual powers that are exercised by banks, "and such incidental powers as may be necessary to carry on such business." *Section* 12. Such corporations have always possessed the right to exercise all their powers through agents of their own selection, quite as completely as a natural person. *Barns vs. Ontario Bank,* 19 *N. Y. Rep.* 158, *Comstock J.;* and there can be no good reason advanced why they should not possess this ability. From the very nature of these associations, they must transact their business in almost all cases through agents; the choice of whom, and the distribution of duties and powers among them, therefore, becomes to the bank a question of vital moment, while to those who deal with the bank, the only question of importance is whether the agent who acted had sufficient authority to bind the principal in the particular transaction to which he seeks to commit it, and not who such agent is or by what official title he is designated. This power of appointment existing in corporations in the absence of any statutory regulations or limitations, leads us to inquire what was the object the legislature had in view in the passage of the nineteenth section of the banking act, wherein they declare that contracts, notes, bills, etc., of the banks shall be signed by the President and Cashier. The act is bringing into existence numerous artificial beings whose relations with the citizens of the State will necessarily become extensive and varied, involving the making of contracts on many subjects quite foreign to the business of banking: for instance; such an association must build, lease, or purchase a suitable building in which to transact business; it must provide itself with furniture, fuel, lights, stationery; it may subscribe to newspapers, effect insurance on its property, and in fact do almost every act that an individual natural person may perform, when the necessities of its business of banking shall require it; and all these matters, may require the execution of contracts. There are also in the everyday business of banking an infinity of contracts to be executed by the bank. If we should stop here, and ask the question, whether the legislature designed by the

passage of section nineteen, to arm these corporations with a defence to all or any of their contracts by simply showing that they were not signed by their President and Cashier, we think the answer that would at once suggest itself to any intelligent mind, would be, that such could not have been the design, whatever may be the effect. It cannot be admitted that in the face of all known usage and practice of banks, and the absence of any possible benefit to any one, either bank or customer, that the legislature meant to obstruct the ordinary workings of the bank, place a veto upon its actions in the hands of two of its officers, and furnish it with the means of practically repudiating all its obligations by requiring the signature of the President and Cashier to each of its transactions to give them validity; we would hesitate before we would give it such effect was it susceptible of no other solution.

The banking law of New York of 1838, contained a similar provision. Section twenty-one of that act provided that "contracts made by any such association, and all notes and bills by them issued and put in circulation as money shall be signed by the President or Vice President and Cashier thereof." In the case of *Barnes vs. Ontario Bank*, 19 *New York Rep.* 152, the same objection that is raised here, was made to a certificate of deposit issued by the bank and signed by the Cashier alone, and the whole question is fully discussed; the court hold that the section is to be construed as appointing statutory agents to contract in behalf of the bank, where no designation of such agents is made by the associates, but not as prohibiting the association from conferring that power upon either of its officers, or appointing other agents to contract in its behalf. This is a rational view of the subject, and while avoiding all the dangers and difficulties that the Defendant's view would lead to, leaves the section in full effect and operation upon the contracts of the bank in the manner that I will proceed to show.

It has been seen that corporations must act by agents; it therefore follows that whoever seeks to enforce the contracts of a corporation, must show that the agent who made them had authority to bind his principal; this may often be presumed from the act of the agent being within the scope of the

general duties of his office, and may often require distinct proof of authority; under section nineteen of this act, when the contract is signed by the President and Cashier, the corporation is bound in all cases in which the corporation was capable of entering into the contract. No other proof than the signatures of these two officials is necessary to be shown. They are the agents of the corporation appointed by statute to perform any act within its powers, and the public may always accept them as such, unless perhaps where a party should have express knowledge of a want of authority in them. The object of the provision, therefore, is to provide the public with evidence of the authority of the bank agents, and not drive them to prove facts difficult of attainment. Any one may contract with these corporations, through other than their statutory agents if they deem it safe and advisable, but of course in such cases before they can enforce their contracts against the principal, they will be obliged as best they can to show the authority under which the agent acted.

There is nothing in the contract set out in the complaint that necessarily proves it to be of a character that the corporation was incapable of making; we can readily see how the Defendant in the regular course of banking might legitimately hold relations with the Exchange Bank of Glencoe that would make it highly proper that it should protect its issues as it agreed to do. Although a corporation is not permitted to transact business other and different from the one for which it was chartered, yet it should clearly appear that the act or contract was not within its powers before a court would declare such to be its character.

The answer is bad. The judgment is therefore reversed and the case remanded to the court below for such further proceeding to be taken therein, as to that court shall seem proper.