BELLE J. ROGERS and others *vs.* ELIZABETH BENTON and others.

June 26, 1888.

Mortgage—Foreclosure—Abortive Attempt under Power—Subsequent Action.—An abortive attempt to foreclose by advertisement is no bar to the right to resort to foreclosure by action.

Same—Purchaser considered as Assign of Mortgagee.—Though an attempted foreclosure be abortive, as such, it may take effect as a transfer of the rights of the mortgagee to the purchaser at the sale, and to those who claim under him by conveyance of the interest in the premises apparently acquired by such purchaser at the foreclosure sale. Following *Johnson* v, *Sandhoff*, 30 Minn. 197.

Same — Mortgagee in Possession, how Constituted. — To constitute a "mortgagee in possession," the mortgagee must be in possession by reason of the agreement or assent of the mortgagor or owner of the fee th.⌐ he have possession under and because of the mortgage. Assent, however, may be implied from circumstances. Such assent in this case *held* to be established by the evidence.

Same—Possession by Purchaser at Defective Foreclosure Sale—Action to Redeem, when Barred.—If the purchaser at such sale, or his assign, go into possession of the mortgaged premises with the assent of the mortgagor, under the rights supposed to have been acquired under the foreclosure sale, he will be deemed a mortgagee in possession. The right of the mortgagor to bring an action to redeem will be barred after the lapse of 10 years from the date of the entry of the mortgagee into possession.

Same—Effect of Possession until Redemption Barred. — Where the mortgagee has gone into possession as "mortgagee in possession," and so remains (the mortgage being unpaid) until the right of action by the mortgagor to redeem is barred, he becomes vested with the title to the premises.

Same—Abandonment of Possession—Temporary Absence.—Where the mortgagor has surrendered possession to the mortgagee, and the latter has gone into actual possession, and during the 10 years thereafter he has done nothing indicating an intention to abandon it or to restore it to the mortgagor, and the latter has not re-entered or asserted any right to do so, the mere fact that the mortgagee temporarily omitted to actually occupy the

| 39 | 39 |
| 39 | 472 |
| 39 | 39 |
| 44 | 202 |
| 39 | 39 |
| 45 | 378 |
| 39 | 39 |
| 52 | 75 |
| 54 | 521 |
| 39 | 39 |
| 56 | 129 |
| 56 | 170 |
| 39 | 39 |
| 57 | 543 |
| 57 | 551 |
| 39 | 39 |
| 63 | 165 |
| c63 | 277 |
| 39 | 39 |
| 73 | 98 |
| 39 | 39 |
| e85 | 414 |

premises during a portion of the 10 years will not affect his rights as "mortgagee in possession." Under such facts, the possession must be deemed to have continued in him.

Plaintiffs brought this action, on August 31, 1887, in the district court for Chisago county, against the defendant Elizabeth Benton, who is the widow, and the other defendants, who are the heirs-at-law, of Edwin K. Benton, deceased, to remove from plaintiffs' title to the lands described in the complaint, the cloud created by defendants' claim of title thereto, and to have it adjudged that the defendants have no title or interest in the land or any right of possession, etc.

The action was tried by *Crosby*, J., who found the facts stated in the opinion, and ordered judgment for plaintiffs. A new trial was refused, and the defendants appealed.

*Warren H. Mead*, for appellants.

*Clark, Eller & How*, for respondents.

MITCHELL, J. The principal questions in this case are, what constitutes "a mortgagee in possession," and what are his rights? The facts, as found by the court, so far as here material, are that, one Edwin K. Benton being the owner of a tract of land containing 240 acres, he and his wife, defendant Elizabeth Benton, in December, 1857, executed a mortgage upon it to William and James Chaffee, to secure the payment of $1,000, in one year. Benton resided on the land until the fall of 1866, when he left the state, and went to the state of Connecticut, where he continued to reside until his death, October 3, 1878; his wife and children continuing, however, to reside on the premises until March, 1876. In July, 1874, W. B. Conant, the assignee of the mortgage, proceeded to foreclose by advertisement under a power of sale; and at the mortgage sale, August 22, 1874, bid in the land, and obtained a sheriff's certificate of sale. No redemption having been made, in February, 1876, Conant demanded possession as owner under the mortgage sale from the defendant Elizabeth Benton, who, in compliance with the demand, removed from and vacated the premises in March, 1876. In February, 1876, Conant and wife had quitclaimed the premises to one Mills, who, on the same day, quitclaimed them to Mrs. Conant. On the 1st day of June, 1876, Mrs. Conant and family entered into possession of the

whole of the premises peaceably and in good faith, claiming to be the owner; and she, and those claiming under her, have ever since, without objection from any one, remained in the actual, continuous, and peaceable possession of the premises until in August, 1887; except that, as the court finds, the south 80 acres, which had been conveyed by the Conants to the plaintiff Dodge, has not been actually occupied by any one since March, 1885,—this part of the land, as the evidence discloses, being unimproved, and the house upon it having been burned. On the 27th of August, 1887, the defendant Elizabeth Benton, having obtained a quitclaim from the heirs of Edwin K. Benton, intruded herself into some rooms in the dwelling-house on the north 80 acres occupied by the tenant of plaintiff Rogers. So far as appears, this was the first time either she or any of the heirs of Benton made any claim to the premises since they vacated them, in March, 1876. It is not claimed that the mortgage from Benton to the Chaffees has ever been paid. The plaintiffs claim through certain mesne conveyances under Mrs. Conant,—the plaintiff Rogers the north 160 acres, and the plaintiffs Dodge and Hall the south 80. It is conceded that the foreclosure by Conant, in 1874, was abortive; the time for foreclosure under the power of sale having previously expired. Laws 1871, *c.* 52. Plaintiffs claim, however, that it was in 1876 still a live mortgage, that might have been foreclosed by action; and that they, and those under whom they claim, occupied the position of mortgagees in possession, whose rights had, prior to August, 1887, ripened into title by the expiration of the time within which the mortgagor, or those claiming under him, might have brought an action to redeem.

Defendants' first position is that Conant, having elected to foreclose by advertisement, could not afterwards have foreclosed by action, and therefore that the mortgage was extinguished and dead before the Conants entered into possession, in June, 1876. That the two modes of foreclosure are cumulative, and that a void attempt to foreclose by advertisement does not destroy the lien of the mortgage or cut off the right to resort to foreclosure by action, is too well settled to admit of discussion. *Folsom* v. *Lockwood,* 6 Minn. 119, (186;) *Lash* v. *McCormick,* 17 Minn. 381, (403.) Neither is there any-

thing in the point that evidence of any such right was inadmissible under the complaint. It is true that it alleges a valid foreclosure, and asserts title under it; but it alleges all the facts necessary to entitle plaintiffs to the rights of mortgagees in possession, if the evidence warrants it.

This brings us to the first important legal question in the case, viz., whether the right to foreclose by action still continued when the Conants went into possession, June 1, 1876. This cause of action accrued against Benton in December, 1858, and, under Laws 1870, c. 60, would have been barred September 8, 1870, unless saved from the operation of the statute by his departure from and residence out of the state. It has been determined that the exception in Gen. St. 1866, c. 66, § 15, from the time limited for commencing actions, of the time during which the defendant resides out of the state, applies to an action to foreclose a mortgage upon real estate. *Whalley* v. *Eldridge*, 24 Minn. 358. We need not here discuss the nature of the absence from the state on part of a defendant necessary to prevent the statute from running. The evidence abundantly justified the court in finding that in this case it was permanent in its nature, and that Benton resided in Connecticut from the time of his departure, in 1866, until his death, in 1878. The fact that he never returned during these 11 years, and that in his will, executed shortly before his death, he described himself as of East Windsor, Conn., abundantly justified the conclusion that his absence was a permanent change of residence, and, if so, it was of no legal importance that his family remained behind. The fact that Conant might, notwithstanding the non-residence of the mortgagor, have resorted to substituted service of the summons, would not take the case out of the statutory exception. The right to foreclose by action, therefore, still existed when the Conants entered into possession.

Though the foreclosure was ineffectual as such, yet, under the facts of this case, by the deeds from Conant to Mills, and from Mills to Mrs. Conant, of the interest apparently acquired by Conant as purchaser at the foreclosure sale, Mrs. Conant became the owner of the mortgage. *Johnson* v. *Sandhoff*, 30 Minn. 197, (14 N. W. Rep. 889;) *Holton* v. *Bowman*, 32 Minn. 191, (19 N. W. Rep. 734.) The ques-

tion is, did she acquire possession of the premises under such cir-
cumstances as to make her "a mortgagee in possession?"

The law as to what constitutes "a mortgagee in possession" has not
been so clearly defined by the decisions as it might be. Sometimes
the subject is referred to as if all that is necessary is that the mort-
gagee should be in possession in fact, regardless of the mode of ac-
quiring it. Sometimes a mortgagee in possession is spoken of as one
who has acquired possession "peaceably," or, again, "lawfully." At
common law, a mortgage conveyed the legal title, defeasible upon
payment of the mortgage, and upon breach of the condition the mort-
gagee became at once entitled to the possession of the mortgaged
premises, and, having this right, could maintain an action of eject_
ment. But this has been changed by statute, which provides that a
mortgage of real property is not to be deemed a conveyance so as to
enable the mortgagee to recover possession without foreclosure. Gen.
St. 1878, *c.* 75, § 29. It was difficult for the courts at first to free
themselves from their old ideas of the nature of a mortgage, or to re-
alize the full extent of the change wrought by this statute. They
still clung to the idea that a mortgage conveyed the legal title, and
gave this statute an absolutely literal construction. They seemed to
think that the mortgagee, after condition broken, still had the right
of possession, but that the statute merely forbade its legal enforce-
ment. Hence, if he could only somehow get possession, he could
maintain it on common-law principles. Any such doctrine is utterly
inconsistent with all legal principles. If a mortgagee in possession
can insist on maintaining it, his right must depend upon his contract,
and must be capable of enforcement. *Newton* v. *McKay*, 30 Mich.
380. The legislature, by the statute referred to, doubtless intended
to sweep away every remaining vestige of the ancient common-law
rule, which regarded a mortgage as a conveyance of the title, and to
make it a mere chattel,—a lien; the fee and right of possession re-
maining in the mortgagor both before and after condition broken.
*Kortright* v. *Cady*, 21 N. Y. 343. This court, although at first not
entirely emancipated from the old ideas as to the nature of a mort-
gage,— see *Pace* v. *Chadderdon*, 4 Minn. 390, (499,)—has subse-
quently, by numerous decisions, planted itself squarely upon this doc-

trine. *Adams* v. *Corriston*, 7 Minn. 365, (456;) *Donnelly* v. *Simonton*, Id. 110, (167;) *Berthold* v. *Holman*, 12 Minn. 221, (335;) *Spencer* v. *Levering*, 8 Minn. 410, (461;) *Loy* v. *Home Ins. Co.*, 24 Minn. 315.

It follows necessarily from this that a mortgagee, even after condition broken, has no right or remedy except to foreclose his mortgage; that he cannot, merely under his mortgage, either recover or maintain possession of the mortgaged premises. The only logical rule is that, to constitute "a mortgagee in possession," the mortgagee must be in possession by reason of the agreement or assent of the mortgagor or his assigns that he have the possession under the mortgage and because of it. The right to take possession under his mortgage being taken away, nothing remains but to foreclose, or else make some arrangement for his better security with the owner of the fee. Having no right to take possession under his mortgage, the mortgagee can get none, except by the agreement or assent of the one who owns that right. This, of course, need not necessarily be express. It may be implied from circumstances. Where the mortgagor expressly abandons possession, his assent that the mortgagee might go into possession under his mortgage might well be implied, especially when he allows him to remain in possession for a considerable length of time without objection. But, after all, the assent, express or implied, of the mortgagor, that the mortgagee may take possession under or because of his mortgage, is of the essence of "a mortgagee in possession."

This assent is conclusively proved in the present case. Benton, by his permanent removal from the state, abandoned all personal occupancy or possession. Conant demanded the possession from Mrs. Benton under his mortgage, or by virtue of rights supposed to have been acquired under its foreclosure. She surrendered possession in pursuance of that demand, knowing, as she herself testifies, that Conant was coming in under the mortgage, and that her husband knew it too; and after this entry the Conants, and those claiming under them, were allowed to remain in possession over 10 years, without objection or assertion of any right in themselves by the mortgagors, or any one claiming under them. The fact that Conant claimed the right to the possession under his foreclosure, and threatened legal pro-

ceedings to obtain it, and that Mrs. Benton may at that time have supposed that he had that right, does not alter the legal aspect of the case, or render Mrs. Benton's act any the less a voluntary surrender of the possession to Conant as mortgagee. Mrs. Conant, and those claiming under her, had therefore the rights of "mortgagees in possession." The right to foreclose and the right to redeem being reciprocal and commensurable, the time within which an action to redeem must be brought is, in analogy to the statute limiting the time for commencing an action to foreclose, 10 years. *Holton* v. *Meighen,* 15 Minn. 50, (69, 80;) *King* v. *Meighen,* 20 Minn. 237, (264;) *Parsons* v. *Noggle,* 23 Minn. 328; *Fisk* v. *Stewart,* 26 Minn. 365, (4 N. W. Rep. 611.) The right of action to redeem on part of Benton accrued not later than June 1, 1876, and hence expired certainly not later than June 1, 1887; assuming that the time was extended one year under Gen. St. 1878, *c.* 66, §§ 18, 19, on account of his death. The time in which to bring this action was not extended by reason of Benton's own absence from the state. *Parsons* v. *Noggle, supra.*

While, perhaps, we have never distinctly so held,—see *Meighen* v. *King,* 31 Minn. 115, (16 N. W. Rep. 702,)—yet the necessary and logical result of our decisions is that, where the holder of the mortgage has gone into possession as "mortgagee in possession," and so remains (the mortgage being unpaid) until the right of action to redeem is barred, he becomes vested with an absolute legal title to the mortgaged premises. Such was the position of the plaintiffs in this action at and prior to the time that defendant Elizabeth Benton intruded herself into the premises in dispute, on the 27th of August, 1887. Of this there can be no question, as to the 160 acres claimed by the plaintiff Rogers. The fact that plaintiffs Dodge and Hall have not actually occupied or lived upon their 80 acres since the spring of 1885 cannot, under the facts of this case, make any difference. They have done nothing indicating an intention to abandon their possession, much less of restoring it to the mortgagor or his heirs. Their ceasing to retain the *pedis possessionem* was merely incident to the unimproved and untenantable condition of the premises. They continued to pay taxes on them as their property. The possession hav-

ing been surrendered by the mortgagors in 1876 to the Conants as mortgagees, and neither the Conants nor those under them having done anything indicating an intention to abandon the possession or restore it to the mortgagors, and the latter not having re-entered or asserted any right to do so within 10 years, we do not think that the mere fact that the mortgagees have temporarily omitted to actually occupy the premises would have the effect of restoring the possession to the mortgagors, or of in any manner affecting the rights of the plaintiffs as mortgagees in possession. Under the facts, the possession must be deemed to have continued all the time in the plaintiffs.

Order affirmed.