MATILDA G. CARSON vs. THOMAS COCHRAN, JR., et al.

Argued Dec. 1, 1892.  Decided Dec. 23, 1892.

**Mortgagor Estopped to Deny his Title.**

In an action to foreclose a mortgage, the mortgagor, and those claiming under him, cannot set up as a defense that he had no title to the mortgaged premises.

**A Deed Held to be a Valid Power in Trust.**

*Held* that, if a certain instrument did not create a valid trust, it is valid as a power in trust.

**Voluntary Payment of a Claim Cannot be Recalled.**

If a party voluntarily, and without mistake of fact, pays as interest a greater rate than is legally enforceable, (but not usurious,) the appropriation thus made by the parties will not be disturbed, but will stand as any other voluntary payment; and when it is paid on a debt secured by mortgage, subsequent purchasers of the mortgaged premises, unless they show some special equity peculiar to themselves, have no greater rights in that respect than the mortgagor.

**Partial Payment of the Debt will Save the Security from the Statute of Limitations.**

A partial payment which prevents the statute of limitations against the debt from running will also prevent the statute from running against the remedy on the mortgage security; and a purchaser from the mortgagor, with actual or constructive notice of the mortgage, will be bound by any previous acknowledgment of the debt by his grantor.

Appeal by defendants, Thomas Cochran, Jr., the Chicago, Milwaukee & St. Paul Railway Company and others, from a judgment of the District Court of Fillmore County, *Farmer*, J., entered March 25, 1892.

Twenty-six persons on August 28, 1868, agreed together to each pay in $2,500, making a total of $65,000, and with it to buy of Cyrus G. Wykoff, five hundred and twenty-five acres of land on Root River in Fillmore county, and lay out a village thereon, to be called Lanesboro, construct a dam on the river, create a water power, build a hotel, grade streets, and make other improvements on the property. The money was paid in, the property purchased, and the title taken in the name of Clark W. Thompson, Frederick A. Lane and Henry

C. Kingsley. They, at the same time made a declaration of trust signed, sealed and recorded, in and by which they certified, covenanted and declared that they held the property and the surplus of the money, in trust for the twenty-six contributors, and by which they agreed to plat the land, make improvements, sell the lots and convert the property into money and distribute the proceeds among the contributors. They reserved the power to sell or mortgage any part of the property to raise money to make improvements or pay debts or expenses. In case of the death, resignation or removal of any trustee the others were to appoint another in his stead. This instrument is called "*Exhibit A*" in the opinion. They laid out the village, built the dam, graded streets, constructed a stone hotel, and made divers other improvements. The hotel was situated on block sixteen (16) and the Southern Minnesota Railroad Company laid the tracks of its railway and built its depot on the same block, under an oral agreement with the trustees that they would donate to it the right of way and depot site. On December 24, 1869, the trustees borrowed of the plaintiff Matilda G. Carson of New York $15,000, due in two years, with twelve per cent. interest payable semiannually, and used the money to further improve the property. They secured repayment to her by a mortgage on the whole of block sixteen (16) and other lots.

On June 25, 1876, the trustees, in fulfillment of their oral promise, conveyed the right of way and depot grounds to the railroad company, and it afterwards conveyed this and all its property to the defendant, the Chicago, Milwaukee & St. Paul Railway Company, a Wisconsin corporation. The defendant Thomas Cochran, Jr., became trustee in the place of Clark Thompson, deceased. Payments were made by the trustees from time to time upon the plaintiff's mortgage up to September 21, 1885. These payments were applied by common consent first upon the interest at said rate of twelve per cent. a year up to 1877, and thereafter at the rate of seven per cent. a year, and the balance of the payments was applied upon the principal.

This action was commenced May 3, 1889, by plaintiff to foreclose her mortgage, she claiming $3,740 unpaid and due her thereon; she

prayed that the whole of block sixteen, (16,) including the railroad right of way and the depot thereon, be sold by the sheriff to pay this debt. The trustees and the railway company answered, claiming that the mortgage bore but seven per cent. interest after it fell due, and that the payments made, if properly applied, were more than sufficient to entirely extinguish it. The railway company claimed that the oral contract and possession and subsequent deed made its title paramount in equity to the mortgage. The defendants also claimed that the trust was void under 1878 G. S. ch. 43, §§ 1, 11, and that the statute of limitation of actions had run and barred the action. All these claims were overruled by the trial court and judgment of foreclosure was entered March 25, 1892, and the defendants appeal.

*H. R. Wells* and *B. A. Man,* for appellant.

The trust attempted to be created by the deed Exhibit A, was not authorized by 1878 G. S. ch. 43, § 11, relating to express trusts. *Sumner* v. *Sawtelle,* 8 Minn. 309, (Gil. 272;) *Farmers' Nat. Bank* v. *Moran,* 30 Minn. 165.

The trustees are permitted to collect unlimited amounts. They are not limited as to amount of lands to be purchased. They are absolutely unrestricted as to enterprises or expenditures. They may perpetuate themselves, and the beneficiaries remain unknown and concealed, entirely without the pale of the laws.

The mortgage indebtedness was fully paid before the action to foreclose was brought. It provides for interest on the indebtedness at the rate of twelve per cent. per annum, but there is no stipulation as to interest after it fell due on July 1, 1871. The law fixed the rate at seven per cent. per annum after due. *Lash* v. *Edgerton,* 13 Minn. 210, (Gil. 197.) There was paid to the plaintiff on account of this indebtedness as found by the court, the sum of $33,049.54. This was $3,291.36 in excess of the amount due at the time of the commencement of this action.

This action was commenced May 3, 1889, more than fifteen years after July 1, 1871, when the debt secured by the mortgage matured. The statute begins to run in favor of the mortgagor from the time

when the mortgagee's right of action accrues. As the proceedings are *in rem* the fact that the defendant was out of the state during the whole period does not save the operation of the statute. *Archambau* v. *Green*, 21 Minn. 520; *Fisk* v. *Stewart*, 24 Minn. 97; *Koch* v. *Briggs*, 14 Cal. 256; 2 Jones, Mort. § 1210; *Sichel* v. *Carrillo*, 42 Cal. 493; *Townsend* v. *Jemison*, 9 How. 407; *McElmoyle* v. *Cohen*, 13 Pet. 312.

The Railway Company is not charged with notice, nor is its fourteen years of purchase and possession for railway purposes disputed. It is a purchaser in good faith, and should be protected against the plaintiff's most inequitable claim. *Parret* v. *Shaubhut*, 5 Minn. 323, (Gil. 258;) *Lash* v. *Edgerton*, 13 Minn. 210, (Gil. 197;) *Mills* v. *Kellogg*, 7 Minn. 469, (Gil. 377.)

*Lloyd W. Bowers*, for respondent.

In an action to foreclose a mortgage the title of the mortgagor cannot be litigated. *Banning* v. *Bradford*, 21 Minn. 308; 2 Jones, Mortg. § 1482; 2 Hilliard, Mortg. (4th Ed.) 123.

If the trust were invalid under 1878 G. S. ch. 43, § 11, still it would be valid, as a power, under section fourteen of the same chapter. *Randall* v. *Constans*, 33 Minn. 329.

If the declaration of trust were treated as a total nullity, then Thompson, Lane and Kingsley would remain absolute owners of the land. In that view they of course had the right to mortgage the land for Mrs. Carson's $15,000 loan.

The principal not being paid at maturity, the parties went on paying the same rate of interest after maturity as before, by mutual consent that such rate was proper. No question of the right of plaintiff to twelve per cent. interest after maturity was made until 1877. Both sides believed her entitled to it, and payments were made and received, as and for interest, at that rate. These payments of interest at twelve per cent were purely voluntary, made under a mistake of law only, if there was any mistake, and cannot be disturbed. *Woolfolk* v. *Bird*, 22 Minn. 341; *Taylor* v. *Burgess*, 26 Minn. 547; *Cornell* v. *Smith*, 27 Minn. 132; *Nutting* v. *McCutcheon*, 5 Minn. 382, (Gil. 310.)

As to the property of the Railway Company against which plaintiff was given judgment, it is found that the Railway.Company did not pay value.

This court has already ruled that the limitation prescribed by 1878 G. S. ch. 66, § 11, for foreclosure actions, is subject to the other general provisions of the same title concerning "the time of commencing actions;" and it has ruled that the limitation time for foreclosure actions is enlarged by nonresidence of the holders of the equity of redemption, pursuant to 1878 G. S. ch. 66, § 15. *Whalley* v. *Eldridge,* 24 Minn. 358; *Rogers* v. *Benton,* 39 Minn. 39; *Foster* v. *Johnson,* 44 Minn. 290.

An action to foreclose a mortgage is not *in rem* but *in personam,* just as much as an action on the note or bond secured by the mortgage. *Bardwell* v. *Collins,* 44 Minn. 97.

Part payment will keep a mortgage alive against purchasers of parts of the mortgaged property just as much as against the mortgagor. *Hughes* v. *Edwards,* 9 Wheat. 489; *Dowling* v. *Ford,* 11 M. & W. 329; *Hough* v. *Bailey,* 32 Conn. 288; *Martin* v. *Bowker,* 19 Vt. 526; *Mahon* v. *Cooley,* 36 Iowa, 479; *Clinton County* v. *Cox,* 37 Iowa, 570; *Brown* v. *Rockhold,* 49 Iowa, 282; *Schifferstein* v. *Allison,* 123 Ill. 662; *Ayres* v. *Waite,* 10 Cush. 72; *Waterson* v. *Kirkwood,* 17 Kan. 9; *Schmucker* v. *Sibert,* 18 Kan. 104; *Allen* v. *O'Donald,* 28 Fed. Rep. 17; *Ewell* v. *Daggs,* 108 U. S. 143; *Fisk* v. *Stewart,* 24 Minn. 97; *Sutherlin* v. *Roberts,* 4 Or. 378; *Sanger* v. *Nightingale,* 122 U. S. 176; *New York Life Ins. & Trust Co.* v. *Covert,* 6 Abb. Pr. (N. S.) 154.

MITCHELL, J. This was an action to foreclose a mortgage on real estate. The only questions raised by the appeal are whether the conclusions of law were justified by the findings of fact.

1. The first and second assignments of error go to the point that a certain trust (Exhibit A of the complaint) attempted to be created by Thompson, Kingsley, and Lane, and under which they assumed to execute the mortgage in question, is void.

To this there are at least three complete answers: *First.* The only interest which the defendants claim in the property is under

this very trust, either as trustees or as the grantees of the trustees; and the ground of their attack on the mortgage is not that it is, in and of itself, invalid, but that the mortgagors had no title or interest in the land to convey. The position of the defendants is suicidal; for, if they are right in their contention, they themselves have no interest either in the property or in the result of this action. The mortgagor, and those claiming under him, are estopped to thus deny his title. The decree of foreclosure binds his interest, whatever it may be, and nothing more, and to such a decree the mortgagee is entitled. *Second.* If Exhibit A is not valid either as a trust or a power in trust, then Thompson, Kingsley, and Lane remained the absolute owners of the land under the conveyance from Wykoff, and as such, of course, had power to execute the mortgage. The finding is that the allegation of the complaint that, "at the time of the execution of said instrument, [Exhibit A,] they owned all the lands therein described," is true. The conveyance to them from Wykoff was in fee simple, and it nowhere appears that he conveyed the lands for the purposes of any such trust, or that the declaration of trust was in pursuance of, or any part of, an agreement between him and them. The mere fact that the instruments are of the same date does not, of itself, establish any such connection between the two. This declaration of trust may have been the voluntary act of Thompson, Kingsley, and Lane, alone, or the result of some arrangement between them and the proposed beneficiaries of the trust. The recital in the instrument (to which Wykoff was not a party) that the title had been placed in their names to enable them "to carry out with greater facility the object aforesaid, [the improvement and development of the land as a townsite,] but in trust for the parties contributing the funds aforesaid," is entirely consistent with such a hypothesis. *Third.* But, in any view of the case, Exhibit A, if not valid as a trust, under 1878 G. S. ch. 43, § 11, is at least valid, under section 14 of the same chapter, as a power in trust to convey or mortgage the lands. 1878 G. S. ch. 44, § 2, defines a power as "an authority to do some act in relation to lands, or the creation of estates therein or of charges thereon, which the owner granting or reserving such power might himself lawfully perform."

2. The third assignment of error goes to the point that, on the facts found, the mortgage had been fully paid. The bond secured by the mortgage, executed December 24, 1869, was due and payable July 1, 1871, with interest at twelve per cent. per annum, but contained no provision as to the rate of interest after maturity. The principal not having been paid at maturity, the obligors continued to pay interest regularly, at the rate of twelve per cent., until 1877. These payments were made voluntarily, and, as the court finds, expressly made and received as interest, and applied as such, with the consent of both parties. Finally, in 1877, a dispute having arisen as to the right of the plaintiff to any more than seven per cent. after maturity, they settled the matter by agreeing that the payments already made and applied as interest should remain unchanged, but that thereafter the plaintiff should receive only seven per cent.

The contention of the defendants is that inasmuch as, under the laws of this state in force at that time, the bond would only draw seven per cent. after maturity, therefore the excess paid over that rate should be reapplied on the principal, which, if done, would more than pay the bond in full.

It seems to us that this question is settled adversely to defendants' contention by several decisions of this court, under the statutes then in force, to the effect that if there is paid voluntarily and without any mistake of fact, as and for interest, a greater rate than is legally enforceable, the appropriation thus voluntarily made by the parties will not be disturbed. It will stand as any other payment which a person, without any obligation to do so, but with full knowledge of the facts, chooses to make. *Woolfolk* v. *Bird*, 22 Minn. 341; *Taylor* v. *Burgess*, 26 Minn. 547, (6 N. W. Rep. 350;) *Cornell* v. *Smith*, 27 Minn. 132, (6 N. W. Rep. 460.)

And there is no distinction in this respect between a case like the present, where the debtor is seeking a reapplication of such excess in reduction of the amount due upon the demand, and one where he seeks to recover it back in an action brought for that purpose. *Cornell* v. *Smith, supra.* Neither is there any ground for the distinction attempted to be made between the cases cited and the present one, because in the former there was an agreement in form, although not

binding, to pay the larger rate of interest. In either case the important fact remains that the party has voluntarily paid what he was under no obligation to pay. Neither does the fact that the obligors may have been trustees at all affect the rule. In all dealings with the world, they were the representatives of the beneficiaries, and had full control of the business and property. The rule is equally applicable against subsequent purchasers from the mortgagor. They have no greater rights in this respect than he had, even though they purchase without notice of the actual state of the accounts between him and mortgagee. The record does not purport to show how much has been paid on the mortgage, or how the account stands between the parties to it. Of course, a subsequent purchaser or incumbrancer has a right to rely on the record, as to the original amount of the mortgage; but he takes his chances as to how much, if anything, has been paid, and buys subject to the state of the account as it then exists between mortgagor and mortgagee, and has no better or other right than the former in that respect, unless he shows some equity peculiar to himself. In so far as *Whittacre* v. *Fuller*, 5 Minn. 508, (Gil. 401,) holds to the contrary, it has been long since virtually overruled, and is no longer the law in this state. See *Lash* v. *Edgerton*, 13 Minn. 210, (Gil. 197;) *Martin* v. *Lennon*, 19 Minn. 75, (Gil. 45.)

3. Defendants' last contention is that the right to foreclose was barred by the statute of limitations; the action not having been commenced until May, 1889,—more than fifteen years after the maturity of the bond secured by the mortgage.

Partial payments, however, were made every year down to 1886, and one as late as 1889; and the question is whether these payments tolled the statute, as to the mortgage. The general, if not the universal, rule is that a partial payment or an acknowledgment of the debt which would prevent the statute from running against it will also prevent the statute from running against the remedy on the security; and there is certainly nothing in our statute of limitations indicating an intention to establish any new and different rule.

The limitation as to actions to foreclose mortgages (1878 G. S. ch. 66, § 11, as amended by Laws 1887, ch. 69) is one of the provisions

found under the general title, "The Time of Commencing Civil Actions;" and there is no reason for holding that the provisions of 1878 G. S. ch. 66, §§ 15, 24, are not as applicable to actions of foreclosure as to any other civil actions.

By holding that an action to foreclose a mortgage is a personal action, and not a proceeding *in rem,* as we did in *Whalley* v. *Eldridge,* 24 Minn. 358, and *Bardwell* v. *Collins,* 44 Minn. 97, (46 N. W. Rep. 315,) and that under the provisions of 1878 G. S. ch. 66, § 15, the time during which the owner of the equity of redemption was a nonresident is to be excluded, as we did in *Whalley* v. *Eldridge, supra; Rogers* v. *Benton,* 39 Minn. 39, (38 N. W. Rep. 765;) and *Foster* v. *Johnson,* 44 Minn. 290, (46 N. W. Rep. 356,)—we virtually decided this case.

Whether a payment or other acknowledgment of the debt by the mortgagor, after he has parted with the property, will keep alive the lien of the mortgage, as against the purchaser, (a question upon which there is some conflict of authority,) it is not necessary to consider; for in the present case a payment was made within fifteen years, and before any of the appellant defendants had purchased from the trustees. And all the authorities hold that a purchaser from the mortgagor, with actual or constructive notice of the mortgage, will be bound by any previous acknowledgment of the debt by his grantor. *Heyer* v. *Pruyn,* 7 Paige, 465; *Hughes* v. *Edwards,* 9 Wheat. 489.

Judgment affirmed.

(Opinion published 53 N. W. Rep. 1130.)