CHARLES E. BRAME *vs.* HORACE A. TOWNE.

Argued Dec. 4, 1893.   Affirmed Jan. 5, 1894.

No. 8442.

"Quitclaim and convey" construed.

The words "quitclaim and convey," in a certain contract, construed as being used in the sense of "convey by quitclaim," and as binding the obligor merely to quitclaim his interest in the premises, and not to make good title.

Appeal by plaintiff, Charles E. Brame, from a judgment of the District Court of Hennepin County, *Henry G. Hicks*, J., entered January 5, 1893, on the pleadings that he take nothing by his action.

*Welch & Welch*, for appellant.

*John H. Nickel* and *Flanery & Cooke*, for respondent.

MITCHELL, J.   This was an action for damages for the alleged nonperformance of a contract to convey real estate.   The appeal is from a judgment on the pleadings in favor of the defendant.   There are possibly other grounds upon which the judgment might be affirmed, but as we construe the agreement of the parties, (Exhibit A of the answer,) and especially the expression "quitclaim and convey," the contract was, according to the allegations and admissions of the plaintiff, fully performed by the defendant.   The phrase "quitclaim and convey" is a peculiar one, the meaning of which, taken alone, is somewhat ambiguous.   The question is, in what sense did the

parties intend it? And in determining this we may resort to the surrounding circumstances, and the pre-existing relations of the parties to each other and to the subject-matter.

The facts, as admitted by the pleadings, are substantially as follows: A number of lots, including the two described in the complaint, (16 and 17,) were each subject to three successive mortgages, of which defendant, Towne, held the second and third. The owner of the first mortgage having foreclosed and bid. in the property, defendant purchased the sheriff's certificates of sale. Plaintiff Brame and "Brame and Moore" held two judgments against the owners of the equities of redemption, under which they had filed notices of intention to redeem, and deposited with the sheriff the amount of money necessary for that purpose. Towne disputed their right to redeem, and had commenced an action to enjoin them from doing so, and deposited with the clerk of the court the amount of Brame and Moore's judgments.

At this juncture of affairs the parties executed Exhibit A, "as and for a settlement of all matters herein between the parties, * * * it being agreed and understood that this shall be a settlement in full of all matters arising from, relating to, or growing out of this proceeding." By the terms of the agreement, the redemption money in the hands of the sheriff was to be returned to Brame and Moore, who were also to receive the money deposited by Towne with the clerk of the court, being the amount of their two judgments, which were to be assigned to Towne. The lots which were the subject of the action were to be divided between the parties; Towne to receive all except 16 and 17, which were to go to Brame; Brame and Moore to execute to him proper instruments of release of the lots, except 16 and 17, and said Towne "to quitclaim and convey" said lots 16 and 17 to Brame, and Brame and Moore to pay to Towne $50 "as and for said deed and conveyance;" the action to be dismissed without costs to either party.

All the provisions of this agreement were fully executed, including the execution of a quitclaim deed by Towne to Brame of lots 16 and 17. At this time all parties supposed that the foreclosure of the first mortgage was valid, and consequently that Towne's quitclaim would convey title. As a matter of fact, however, the foreclosure as to these two lots was abortive, and consequently the quitclaim conveyed

no title to the lots.    Plaintiff's contention is that, under his contract to "quitclaim and convey," Towne was bound, not merely to execute a quitclaim, but to make good title.    We are not unmindful of the rule that, in contracts between vendor and vendee for the sale of real estate, an agreement to make a good title is implied, unless the liability is expressly excluded.    But these parties did not occupy the relation of ordinary vendor and vendee.    Brame and Moore were claiming the right ·to redeem the lots covered by the mortgages. Towne was contesting this right.    Each party desired and expected to secure title under the foreclosure.    In this condition of affairs, they agreed on this compromise and division of the property which was the subject of their controversy.

Whatever the term "quitclaim and convey" might be construed to mean, under other circumstances, we are of opinion, in view of the circumstances of this case and the relations of the parties, as well as upon a view of the whole instrument, that the intention was merely that Towne should quitclaim all his interest in the property under the foreclosure sale, as well as under his mortgages; that the phrase "quitclaim and convey" was intended in the sense of "convey by quitclaim."    The language used indicates clearly that the conveyance was to be in form, at least, a quitclaim.    A quitclaim deed is a well-known form of conveyance, of the nature of a release, with words of grant as well as release, and it is the mode adopted where the grantor does not wish to be responsible for the title.    Aside from the use of the word "quitclaim," the relation of the parties to the property, and the nature of this settlement, tend strongly to negative the idea that it was the intention that Towne should obligate himself to make good title.

Our conclusion is that the execution of the quitclaim deed was a full performance of the contract.

Whether the mutual mistake as to the condition of the title would have been a ground for a rescission is a question not before us.    We have made no reference to the allegations that subsequently to the execution of the contract the city of Minneapolis condemned these lots for public use, because these allegations are wholly immaterial. Of course, the right of parties to the land would be transferred to the fund awarded as compensation; and while the quitclaim to the plaintiff might, because of the abortiveness of the foreclosure, be ineffectual

to convey title to the lots, it would, under the circumstances, operate as an assignment to him of the mortgage, and thus entitle him to the award to the amount due on the mortgage. See *Johnson* v. *Sandhoff*, 30 Minn. 197, (14 N. W. 889;) *Holton* v. *Bowman*, 32 Minn. 191, (19 N. W. 734;) *Rogers* v. *Benton*, 39 Minn. 39, (38 N. W. 765.)

Judgment affirmed.

(Opinion published 57 N. W. Rep. 454.)