E. B. LAW v. CITIZENS' BANK OF NORTHFIELD and Others.[1]

February 14, 1902.

Nos. 12,808—(163).

**Foreclosure—Purchaser under Invalid Sale—Redemption from Prior Lien.**

A purchaser at an abortive mortgage foreclosure sale, who has gone into possession of the mortgaged premises by consent, express or implied, of the mortgagor, or his successor in interest, in the belief that the foreclosure was regular and valid, and has remained in such possession until the redemption period has expired, has a subsisting interest under the mortgagor's title, and may redeem, under the provisions of G. S. 1894, § 6041, from the foreclosure of a senior lien.

Action in the district court for Goodhue county to determine the adverse claims of defendants to land in possession of plaintiff. Upon the trial judgment was ordered for defendants upon the pleadings. From an order, Williston, J., granting a motion for a new trial, defendants appealed. Affirmed.

*Edward P. Sanborn* and *Fred N. Dickson*, for appellants.

*O. M. Hall*, for respondent.

COLLINS, J.

At the trial below, the court ordered judgment for defendant bank on the pleadings, and thereafter vacated its order and granted a new trial. The bank and defendant Norton appealed.

The facts shown by the pleadings, which need to be stated in this opinion, are as follows: April 4, 1883, one Fagan was the owner of the quarter section of land in controversy, and executed and delivered (his wife joining therein) a first mortgage to one Miller, which mortgage was duly recorded. On the same day Fagan and his wife executed and delivered another mortgage upon the same tract of land, in which one James Law and the plaintiff, E. B. Law, were named as mortgagees; said mortgage being expressly made subject and subordinate to the Miller mortgage. This second mortgage was also duly recorded. In 1889 an attempt

[1] Reported in 89 N. W. 320.

was made to foreclose it under the power, and at the sale the mortgagees, James and E. B. Law, became the purchasers of the mortgaged land (as they supposed) for the amount due upon their mortgage, with costs and disbursements. A sheriff's affidavit of sale, and his certificate thereof, were immediately executed and delivered, and with a copy of the notice of the sale, proof of its publication, and of service of the notice upon the mortgagors, duly recorded. The proceedings seem to have been regular in every respect, except that from the record of these instruments it appears that the land sold was described in the sheriff's affidavit and certificate as the northeast $\frac{1}{4}$ of the section, instead of the southeast $\frac{1}{4}$, as it should have been. The original instruments were not produced in evidence. No redemption was made from this sale. The mortgagors abandoned the land actually mortgaged, during the year for redemption, and the purchasers at the sale immediately took peaceable and actual possession, and since the spring of 1890 have remained in such possession, under claim of ownership, and without having knowledge of the error in the sheriff's affidavit and certificate until just prior to the bringing of this action. The first mortgage was assigned by Miller to one Norton, who was and is cashier of the defendant bank, and in 1899 he proceeded to foreclose the same by advertisement. At the foreclosure sale the bank purchased the property and received the certificate. March 7, 1900, twenty days prior to the expiration of the year of redemption from this sale, acting under the provisions of G. S. 1894, § 6041, the plaintiff paid the amount required to redeem, with all interest, costs and charges, to the sheriff of the proper county, and received from him a certificate of redemption, which was duly recorded. The bank refused to accept the money from the sheriff upon the ground that the plaintiff had no right to redeem under the provisions of that section. It was contended that he was a mere lien creditor, entitled to redeem only under the provisions of section 6044, and it was denied that any redemption had been made. Thereupon this action was brought.

The paramount question in this case (putting aside others that have been discussed) is whether or not the plaintiff was an "assign," within the meaning of section 6041, which provides that

"the mortgagor, his heirs, executors, administrators or assigns," may redeem within twelve months after a mortgage foreclosure sale. If, under the facts as presented in this case, he was an assign, the redemption was properly made.

The word "assigns," in that section, was considered by this court in Cuilerier v. Brunelle, 37 Minn. 71, 33 N. W. 123, in which it was held that the word, properly construed, included grantees of the mortgagor and those acquiring his title otherwise than by descent, and, further, that there was no reason why it should be given a larger meaning,—certainly not a meaning which would make it include any of the persons mentioned as redemptioners in section 6044. The conclusion was that "a mere lien creditor" had no right to redeem under the provisions of section 6041; that a junior mortgagee was such a creditor, and was not an assign. Previously, in Brown v. Crookston A. Assn., 34 Minn. 545, 26 N. W. 907, this court had held that the word "assigns," as used in section 6046, was broad enough to include a junior mortgagee, and that he was an "assign," where there was surplus money arising upon a sale, after payment of the amount due on a fore-closed senior mortgage and all taxes and costs; and this rule was applied in Fuller v. Langum, 37 Minn. 74, 33 N. W. 122,—the opinion immediately following that in Cuilerier v. Brunelle. These cases show clearly that the same word may have a different meaning, depending upon the subject-matter, and the view to be taken of its context and associated words. They illustrate what may be termed the "flexibility" of words or terms found in the same statute and in immediate connection. There has been no departure from the doctrine of the Cuilerier case. In fact, it has been applied in several cases, including the very recent one of Scheibel v. Anderson, 77 Minn. 54, 79 N. W. 594, where it was held that a person having an equitable mortgage upon land, in the form of an absolute conveyance, might redeem from the fore-closure of a prior mortgage under section 6044, as a creditor having a lien, without having first obtained a judicial determination that the absolute conveyance was in fact a mortgage.

We do not now depart from a doctrine which has been so thoroughly established by the decisions of this court, because, on

the facts, this case is easily distinguishable from any which has heretofore been decided, and is not necessarily controlled by any of them. Here it is shown by the pleadings that immediately after the expiration of the year within which redemption should have been made, had the Law mortgage been properly foreclosed, the mortgagors abandoned the land, presumably in the belief that the foreclosure had been regular, and that they were no longer entitled to possession. The purchasers at the sale (this plaintiff and James Law) immediately took possession, peaceably, and apparently with the consent of the mortgagors. They have been in possession ever since, in the belief that their mortgage was regularly and duly foreclosed, and that they were the owners of the land,—subject, of course, to the lien of the Miller mortgage. Their rights have not been those of mere creditors, simply, having a lien upon the premises, but have been altogether different and greater. As mortgagees in possession, they have been entitled to hold and occupy the premises, and could only be dispossessed in one of two ways: First, by payment to them by the mortgagors, or their successor in interest, of the amount due upon their mortgage, and all sums which had been paid to protect their rights as mortgagees in possession; or, second, by a foreclosure of the senior mortgage, and the expiration of the year of redemption, without any redemption by them under the junior lien. Their interest and rights as mortgagees in possession were such that they could maintain an action for an injury to the freehold, an action of trespass, or in ejectment, as against third parties. They were no longer mere creditors having a lien, but they were in actual and lawful possession, with all of the rights that follow and that are necessary to protect and retain such possession. They were the owners for the time being.

The marked distinction which has been recognized by this court between an ordinary mortgagee and one who has entered into possession of the premises peaceably and in good faith, in the belief that a foreclosure of his mortgage has been properly made, will be seen upon an examination of Johnson v. Sandhoff, 30 Minn. 197, 14 N. W. 889; Holton v. Bowman, 32 Minn. 191, 19 N. W. 734; Rogers v. Benton, 39 Minn. 39, 38 N. W. 765; Russell v. H. C.

Akeley L. Co., 45 Minn. 376, 48 N. W. 3. In the last case it was held that if a good-faith purchaser at a defective foreclosure sale, or his assigns, go into possession of the mortgaged premises, with the assent of the mortgagor or his successor in interest, which assent may be inferred from the circumstances, he will be deemed a mortgagee in possession; and, if he remain in possession until the right of redemption by the mortgagor is barred, he becomes vested with the title to the premises. He is the owner in fee. In that case there was an inaccuracy as to the day when the mortgage was recorded, but the most serious objection to the sale was that the notice thereof was insufficiently published. This defect rendered the foreclosure proceedings abortive, and conferred no title upon the purchaser at the sale.

None of the cases cited is directly in point here, because in none was the defect the result of a misdescription of the premises in any of the essential instruments, such as the sheriff's affidavit or certificate; but it is difficult to give a sound reason for distinguishing between a sale invalid because the notice of foreclosure is insufficiently published, and a sale invalid because the premises attempted to be sold are improperly described. A foreclosure with either of these errors is invalid, and no rights to the real property can be obtained thereby. One can be questioned as effectively as the other, and the result is the same in either case. The proceedings are of no value, except as they may operate in favor of a purchaser at the sale, who, in reliance upon the regularity of the proceedings, has gone into possession by consent of the mortgagor, or his successor in interest, and has remained undisturbed.

The general rule as to redemptions is that every one interested in the mortgaged estate, or coming in as privy in estate with the mortgagor, may redeem from a sale. The redemptioner must have either the mortgagor's title, or a subsisting interest under it. 2 Pingrey, Chat. Mortg. § 2151. A tenant for years, a person beneficially interested, a tenant by curtesy, and one who has dower rights, or who has the statutory interest which has superseded both curtesy and dower in this state, may redeem. None of these parties is a creditor having a lien which entitles him or confers

the right to redeem under section 6044. They must be "assigns," within the meaning of section 6041, for they are not creditors. A purchaser at an abortive mortgage foreclosure sale, who has gone into possession of the mortgaged premises by consent, express or implied, or the mortgagor or his successor in interest, in the belief that the foreclosure was regular and valid, and has remained in such possession until the redemption period has expired, has a subsisting interest under the mortgagor's title and may redeem under the provisions of section 6041.

It is not to be forgotten, also, that the right of redemption is favored in law; and where it stands admitted by the pleadings that redemption money, sufficient in amount, has been paid to the proper officer, and is in his hands for the use of the party entitled to it, courts should not be astute, or very closely scan the transaction, for the purpose of defeating the redemption right. We must keep in view the general object of the statute giving and regulating redemptions. The purpose is to enable all who have interests or claims in the property which may be cut off to save those interests or claims, in so far as this may be done without impairing the rights of those in whose behalf the sale was made. In this particular case, for illustration, the plaintiff will retain his land, the bank will receive its money,—all that it is entitled to,—and it should ask no more. Exact justice prevails.

The order granting a new trial is affirmed.